EVANGELISCHE LUTHERISCHE ST. THOMAS GEMEINDE, Respondent, vs. CONGREGATION OF THE GERMAN EVANGELICAL LUTHERISCHE ST. MATTHEWS CHURCH OF MILWAUKEE, Appellant.

*October 15—November 9, 1926.*

*Religious societies: Merger: Acquisition by one of property and congregation of another: Rescission and cancellation of conveyances made to accomplish merger: Consideration.*

1. Where the transfer of church property was a mere incident in the accomplishment of the dominant purpose of uniting two churches into one, and the accomplishment of such purpose failed, there was no consideration for the conveyance, and the grantor may rescind the conveyance and procure its cancellation.  p. 344.
2. There can be no consolidation or merger of independent corporations, including religious corporations, without legislative authority.  p. 344.
3. Neither the statutes providing for the organization of church corporations, nor sec. 187.14, Stats., relating to the consolidation of such corporations, authorizes a merger of separate and distinct existing congregations by acquisition of the property and congregation of one by the other.  p. 345.
4. No merger of existing religious corporations having resulted from the attempted acquisition of the property and congregation of one by the other, each retains its identity, and the members of each corporation retain all rights and privileges therein as such members.  p. 346.

5. A religious corporation which conveys its property to another such corporation for the dominant purpose of merging the two may rescind the conveyance and procure a cancellation of the deed as against the objection that the contract, though *ultra vires,* was executed, as the transaction, being not permitted by statute, constituted no contract at all.  p. 347.

APPEAL from a judgment of the circuit court for Milwaukee county: R. S. COWIE, Judge.  *Affirmed.*

The parties to this action are religious societies of the Lutheran faith, each duly incorporated as a religious corporation under the laws of this state.  The defendant was incorporated in 1865, and on January 1, 1925, owned property of the value of $75,000 and had a membership of about 400 communicants.  The plaintiff was incorporated in 1909, and on January 1, 1925, owned property of the approximate value of $30,000, subject to an incumbrance of something less than $6,000, and had a membership of less than 100 communicants.  Both churches are located in the city of Milwaukee.

In the year 1916 some negotiations were had between these two societies looking towards a union of the two churches and their congregations, without, however, reaching any agreement in that respect.  Early in the year 1925 negotiations of a similar character were renewed.  Committees from each society were appointed for the purpose of conferring, considering, and reporting to each society a plan by which the two churches might be united.  These committees met, deliberated and, finally, agreed upon a plan, which is referred to in the record as the "six points" or "Bestimmungen."  These six points are as follows:

"1. The St. Thomas church joins as a whole the St. Matthews church, transfers its property to the St. Matthews church, which latter takes over all rights and obligations of the hitherto St. Thomas church.  Both churches together then form the St. Matthews church.

"2. Both pastors, Pastor Bendler as well as Pastor Kionka, remain the pastors of the thus united St. Matthews church, and the pastors shall preach in both churches by turns. The pastor of the hitherto Matthews church shall be regarded as first pastor.

"3. The hitherto St. Thomas church shall be called 'Matthew Church West.'

"4. The belonging to the one or the other circle shall be optional with the individual member; but where a person goes to Holy Communion there he shall be enrolled as member and there also shall he pay his dues.

"5. The thus united church elects the church board and all perchance necessary assistants.

"6. All other particulars and other provisions in the work of the kingdom of God in the united St. Matthews church are left to later determination of the church as a whole."

These "six points" were ratified and approved at duly and regularly called meetings of each respective church. The plaintiff executed to the defendant a deed of its church property, and a joint meeting of the congregations of the two churches was held at the defendant's church October 5, 1925. At this meeting was presented a list of the communicants of the plaintiff's church, containing seventy-eight names. These names were read to the meeting, and the persons thus named were voted into membership by the defendant congregation. However, only twenty-four or twenty-five of the persons whose names were so read were present at the meeting, and there is no evidence to show that those who did not appear ever consented to becoming members of the defendant congregation. According to the ninth finding of fact made by the trial court it appears:

"That immediately after procuring a deed of the plaintiff's property, the defendant's board of trustees and its other officers took possession and assumed control of plaintiff's property, and that since said time they have been and now are in possession of the plaintiff's church edifice, to-

gether with all its contents; that no further official or other action was taken for the purpose of perfecting the consolidation of the plaintiff and defendant societies; that misunderstandings at once arose between Reverend Kionka and Reverend Bendler, the pastors of the plaintiff and defendant; that the defendant assumed absolute control and dominion over both pulpits; that on the 23d of November, 1925, a meeting of the communicants of the plaintiff was held for the purpose of protesting against the treatment that had been accorded Reverend Kionka, and for the purpose of proceeding no farther in the matter of the attempted consolidation, and for the purpose of considering steps for the return of the plaintiff's property; that at said time written resolutions were adopted and then and immediately thereafter were assented to in writing by seventy-seven of the plaintiff's voting communicants, expressing their dissatisfaction with the attempted consolidation and protesting against the treatment which had been accorded to Reverend Kionka, and that they withdrew their assent to the consolidation, and demanded from the defendant the return to the plaintiff of its property; that a committee was duly appointed to present these demands to the defendant's governing board, which denied the requests and cited Reverend Kionka to appear for the purpose of explaining his conduct in having participated in the meeting of the 23d of November, and having thus stirred up a spirit of rebellion amongst his supporters; that upon his refusal he was cited to appear before the defendant congregation to show cause why he should not be deposed from further occupying his pulpit; that on the 14th day of December, 1925, at a meeting of the defendant congregation which he attended and in which he protested against the right and jurisdiction of the defendant to place him on trial, he was ordered deposed, and was thereafter served with a notice to vacate the parsonage by him occupied."

It is not pretended that in the proceedings leading up to a union of these two churches there was any compliance or attempted compliance with sec. 187.14 of the Statutes, which section provides a method for the consolidation of

church corporations.   It also appears, and the court found, that the defendant has expended no money in the upkeep and maintenance of the church property conveyed to it by the plaintiff.

This action was brought by the plaintiff for the purpose of having said conveyance declared void, for a cancellation of the deed and a reconveyance of the property.   From a judgment rendered in favor of the plaintiff the defendant appeals.

For the appellant there were briefs by *Houghton, Neelen & Houghton* of Milwaukee, and oral argument by *Albert B. Houghton.*

For the respondent there was a brief by *H. O. Wolfe* and *Walter A. John,* both of Milwaukee, and oral argument by *Mr. Wolfe.*

OWEN, J.   The deed executed by the plaintiff to the defendant was not executed pursuant to an agreement of purchase and sale, and the question whether the plaintiff church had power to sell and dispose of its property for a valuable consideration is not here presented.   The dominant purpose sought to be accomplished was not a mere transfer of the church property but a union of the two church societies or congregations into one.   The transfer of the church property was but an incident in the accomplishment of that dominant purpose.   If there was a failure in the accomplishment of that dominant object, then there was no consideration for the conveyance of the church property, and under well settled principles of law the plaintiff may rescind the conveyance and procure its cancellation. 1 Black, Rescission and Cancellation, ch. 5.

It is well established that there can be no consolidation or merger of independent corporations in the absence of legislative authority, any more than there can be an original corporation without legislative sanction.   5 Thompson, Corp.

St. Thomas Gemeinde v. St. Matthews Church, 191 Wis. 340.

(2d ed.) ch. 165. "Legislative authority is just as essential to a valid consolidation or merger of existing corporations as it is to the creation of a corporation in the first instance. It follows that an agreement between two or more corporations to consolidate, in the absence of legislative authority, is *ultra vires,* and will not be enforced even though it may have been partly performed." .7 Fletcher, Corp. § 4670. This applies to religious as well as other corporations. 5 Thompson, Corp. (2d ed.) § 6071, and cases there cited.

Prior to the enactment of ch. 258, Laws of 1919, which now appears in the statutes as sec. 187.14, there was no legislative authority in this state for the consolidation or merger of religious corporations, and this court has most emphatically held that under our statutes providing for the organization of church corporations, two or more separate and distinct congregations cannot lawfully be organized into one corporation. *Evenson v. Ellingson,* 67 Wis. 634, 31 N. W. 342. In that case it was said (p. 645) :

"There is not a single clause or word of our statutes that can possibly be tortured into any reference to the formation of a corporation over more than one single church, and corporations can exist only by the authority and sanction of the law. It is most remarkable that any one should have ever conceived the idea that more than one church or religious society could be embraced in one corporation. What is the policy of our statutes in this respect is the policy of all statutes and laws in this country, and always has been since the formation of our government. . . '. I do not think that another case can be found in this country where it is even claimed that one corporation embraced more than one church or religious society."

In that case it was held that one religious corporation could not be organized under our statutes to include two churches or two congregations of the same religious sect, creed, or denomination that were nine miles distant from each other.

As already stated, there was no attempt or pretended attempt to comply with the provisions of sec. 187.14, Stats., relating to the consolidation of church corporations, and if there had been it would have resulted in the formation of a new corporation. That statutory provision does not authorize one existing religious corporation to acquire the property and swallow up the congregation of another existing religious corporation. So it appears that there is no vestige of authority under the statutes of this state for the merger of these corporations in the manner attempted. No merger, therefore, has resulted. The existing corporations retain their identity. They have not been wound up or dissolved. The members of each corporation retain all rights and privileges in such corporations as such members. The communicants of the plaintiff church have not become communicants of the defendant church by virtue of these proceedings. If some members of the plaintiff church have transferred their membership to the defendant church, it was through their own voluntary acts. Such change of membership was not brought about by virtue of the negotiations and agreements having for their objects a union of the two church societies.

The legal result is that the plaintiff corporation has conveyed to the defendant corporation its church property without any consideration whatever. The plaintiff corporation still exists. The greater portion of its congregation still remains, but it has no church in which to hold its meetings, conduct its religious services, and pursue the objects and purposes of its organization.

The right of the plaintiff to maintain this action is assailed on various grounds. It is said that, even though the contract be *ultra vires,* it is an executed contract and the plaintiff cannot maintain this action for its annulment. Such principles do not apply. This is not a mere *ultra vires* con-

tract. It is not a contract merely outside the scope of the powers of this particular corporation because not authorized by its charter. It is no contract at all. It was an effort to accomplish that which the law does not permit. It is more analogous to an attempt to organize a corporation in the absence of any statutory authorization. It was a mere nullity so far as the accomplishment of the dominant purpose of the transaction is concerned. Under such circumstances, there can be no doubt of the right of the plaintiff corporation to rescind the conveyance and to procure a cancellation of the deed. It follows that the judgment appealed from should be affirmed.

*By the Court.*—So ordered.

ESCHWEILER, J., dissents.