OPINION OF THE COURT
Gabrielli, J.
As a general rule, when an employee is injured in the course of his employment, his sole remedy against his employer lies in his entitlement to a recovery under the Workers’ Compensation Law (Workers’ Compensation Law, § 11). In our previous decisions, we have adhered strictly to this basic rule and have declined to recognize exceptions, even when the liability is purportedly premised upon conduct of the employer acting in a capacity other than that of employer (e.g., Williams v Hartshorn, 296 NY 49; Winter v Doelger Brewing Co., 175 App Div 796, affd without opn 226 NY 581). We have not previously been called upon to consider, however, a situation in which the employer’s liability, if any, is alleged to have arisen solely fyom its independent assumption, by contract or operation of law, of the obligations and liabilities of a third-party tort-feasor. Having examined all of the relevant precedent as well as the firmly rooted policies underlying the Workers’ Compensation Law, we conclude that, in such situations, the exclusivity provisions of that statute do not bar a common-law action against the employer for injuries sustained by an employee in the course of his employment.
Plaintiff’s decedent, an employee of defendant USM Corporation, was killed when a 4,600-pound "ram” from a vertical boring mill broke loose and struck him. There was no doubt that the October 21, 1976 accident occurred "in the course of’ the decedent’s employment within the meaning of section 10 of the Workers’ Compensation Law. Although the decedent’s widow applied for and received workers’ compensation benefits, she subsequently commenced a common-law tort action against USM Corporation, seeking recompense for the decedent’s personal injuries and wrongful death. Also named as party defendants were Emhart Corporation, the parent of USM, and Consolidated Machine Tool Corporation, Farrel-Birmingham Company and Parrel Corporation, all of which had *157 been absorbed by USM through corporate mergers prior to the accident. In her complaint, plaintiff alleged that the accident had been caused by certain defects in the manufacture and design of the vertical boring mill and in the two moving parts that had been directly involved in the accident, a metal "lifting bar” and a 4,600-pound "ram”.
After preliminary discovery had taken place, each of the five corporate defendants moved for summary judgment. USM Corporation, the decedent’s employer, based its summary judgment motion primarily upon section 11 of the Workers’ Compensation Law. That section provides that the employer’s obligation to furnish workers’ compensation benefits is "exclusive and in place of any other liability whatsoever” to employees or their dependents for injuries sustained in the course of employment.
Both Special Term and the Appellate Division concluded that section 11 constituted an absolute bar to the assertion of any common-law claim that plaintiff might have against USM Corporation, regardless of the theory of liability advanced. Accordingly, the causes of action asserted against USM were dismissed. We granted plaintiffs motion for leave to appeal on November 20, 1979 (48 NY2d 608). Because we find the principle of exclusivity embodied in section 11 to be inapplicable to the unique set of facts presented in this case, we now reverse this aspect of the lower courts’ rulings and hold that the causes of action asserted against USM should be reinstated.
It is undisputed that the vertical boring mill which allegedly caused decedent’s injuries was designed several decades ago and manufactured during the early 1950’s by Consolidated Machine Tool Corporation and Farrel-Birmingham Company. It was also established through discovery that Consolidated Machine Tool Corporation had played a significant role in the design of the 4,600-pound "ram” that eventually broke loose from the machine and killed the decedent. Farrel-Birmingham Company was apparently responsible for the 1955 installation of the vertical boring mill in the plant now operated by USM.
Through a series of consolidations and mergers that took place during the 1950’s and 1960’s, Consolidated Machine Tool Corporation and Farrel-Birmingham Company were ultimately absorbed into USM Corporation. In 1954, Farrel-Birmingham, which had acquired a controlling interest in Consol *158 idated three years earlier, dissolved that corporation and, concededly, assumed its assets and liabilities. In 1963, the name of the resulting corporate entity was changed from Farrel-Birmingham Company to Farrel Corporation. Farrel Corporation was finally merged into USM Corporation, the decedent’s employer, in 1968, eight years before the accident in question occurred. It is not seriously disputed that this merger resulted in the assumption by USM, a New Jersey corporation, of the liabilities and obligations of Farrel, a Connecticut corporation, including those liabilities that Farrel had inherited from Consolidated (see Conn Gen Stats Ann, § 33-371, subd [d]; NJ Stats Ann, § 14A:10 — 7, subd [3]; see, also, Business Corporation Law, § 906, subd [b], par [3]).
At the outset, we note our rejection of plaintiffs contention that, notwithstanding section 11 of the Workers’ Compensation Law, she is entitled to maintain a common-law action against USM either in its capacity as a participant in the manufacture and design of the metal "lifting bar” which was involved in the accident or in its capacity as the owner of the premises on which the accident occurred. The theory advanced by plaintiff, commonly known as the "dual capacity” doctrine, has been described by one noted commentator as follows: "[A]n employer normally shielded from tort liability by the exclusive remedy principle [embodied in section 11 of the Workers’ Compensation Law] may become liable in tort to his own employee if he occupies, in addition to his capacity as an employer, a second capacity that confers on him obligations independent of those imposed on him as employer” (2A Larson, Workmen’s Compensation Law, § 72.80, at p 14-112; see, e.g., Reed v The Yaka, 373 US 410; Duprey v Shane, 39 Cal 2d 781; Smith v Metropolitan Sanitary Dist., 77 Ill 2d 313; see, generally, Kelly, Workmen’s Compensation and Employer Suability: The Dual-Capacity Doctrine, 5 St Mary’s LJ 818). The doctrine is most frequently invoked when, as here, an employee or his dependents are seeking to hold the employer liable at common law as the owner of the property upon which a job-related injury has occurred (2A Larson, Workmen’s Compensation Law, at p 14-113). Although several jurisdictions have permitted maintenance of a common-law action under this theory (e.g., State ex rel. Auchter Co. v Luckie, 145 So 2d 239 [Fla]; Marcus v Green, 13 Ill App 3d 699; Duplechin v Pittsburgh Plate Glass Co., 265 So 2d 787 [La]; but see McCarty v City of Marshall, 51 Ill App 3d 842), *159 we have squarely rejected its use in our State (William v Hartshorn, 296 NY 49, supra; Winter v Doelger Brewing Co., 175 App Div 796, affd without opn 226 NY 581, supra; see Minsky v Baitelman, 281 App Div 910; see, also, Murray v City of New York, 43 NY2d 400; cf. Volk v City of New York, 284 NY 279), as have several other jurisdictions (Kottis v United States Steel Corp., 543 F2d 22; Vaughn v Jernigan, 144 Ga App 745; Jansen v Harmon, 164 NW2d 323 [Iowa]; Frith v Harrah South Shore Corp., 92 Nev 447; Billings v Dugger, 50 Tenn App 403). In a similar vein, there has been a spate of cases in recent years in which employees have attempted to avoid the effects of the exclusivity rule by suing their employers in their capacities as manufacturers or designers of hazardous equipment causing injury on the job. While some courts have recognized and adopted this approach (Douglas v E. & J. Gallo Winery, 69 Cal App 3d 103; Mercer v Uniroyal, Inc., 49 Ohio App 2d 279), most have specifically refused to do so (Mapson v Montgomery White Trucks, 357 So 2d 971 [Ala]; Profilet v Falconite, 56 Ill App 3d 168; Winkler v Hyster Co., 54 Ill App 3d 282; Needham v Fred’s Frozen Foods, 359 NE2d 544 [Ind]; Atchison v Archer-Daniels-Midland Co., 360 So 2d 599 [La]; Schlenk v Aerial Contractors, 268 NW2d 466 [ND]; Kottis v United States Steel Corp., 543 F2d 22, supra).
Having examined all of the pertinent precedent, we conclude that the "dual capacity” doctrine as it has been applied to permit common-law suits against employers in their capacities as property owners or manufacturers of plant equipment is fundamentally unsound. The Workers’ Compensation Law was designed to spread the risk of industrial accidents through the vehicle of insurance coverage and, more specifically, to "provide a swift and sure source of benefits to the injured employee or to the dependents of [a] deceased employee” (O’Rourke v Long, 41 NY2d 219, 222), without regard to fault in most instances. In exchange for the security of knowing that fixed benefits will be paid without the need to resort to expensive and sometimes risky litigation, however, the employee has been asked to pay a price in the form of the loss of his common-law right to sue his employer in tort and perhaps to enjoy a more substantial recovery through a jury award. The legislative implementation of this "trade-off” is embodied in section 11 of the Workers’ Compensation Law, which precludes suits against the employer and limits the *160 employees to the recompense afforded under the statute when he is injured in the course of his employment.
We cannot sanction the circumvention of this clear legislative plan by approving a theory which would permit the employer to be sued in his capacity as property owner or manufacturer of equipment used on the job site. As we have previously observed, "an employer remains an employer in his relations with his employees as to all matters arising from and connected with their employment. He may not be treated as a dual legal personality, 'a sort of Dr. Jekyl and Mr. Hyde’ ” (Williams v Hartshorn, 296 NY 49, 50-51, supra, quoting Winter v Doelger Brewing Co., 95 Misc 150, 153). Employers are expected to provide their employees with a safe workplace that is reasonably free of hazards. This obligation to provide a safe workplace simply cannot be separated in a logical and orderly fashion from the duties owed by the employer to his employees by reason of his ownership of the premises or his manufacture of the equipment with which the employees must work. Indeed, these duties are merely subcategories within the complex of obligations that arise in connection with the employment relation. We would be seriously undermining the salutary social purposes underlying the existing workers’ compensation scheme if we were to permit common-law recovery outside of that scheme on the basis of such illusory distinctions. This we decline to do.
Plaintiff’s claim against USM as the successor to the liabilities of Consolidated Machine Tool Corporation and FarrelBirmingham Company, however, stands on a somewhat different footing. It is well settled that the policies underlying the Workers’ Compensation Law do not preclude the maintenance of a common-law action against third-party tort-feasors who may be responsible, in whole or in part, for an. employee’s injuries. "[I]n compensation law, social policy has dispensed with fault concepts to the extent necessary to ensure an automatic recovery by the injured workman; but the disregard of fault goes no further than to accomplish that object, and, with payment of the workman assured, the quest of the law for the actual wrongdoer may proceed in the usual way” (2A Larson, Workmen’s Compensation Law, § 71.10, at p 14-2). In the present case, had the corporate identities of Consolidated Machine Tool Corporation and Farrel-Birmingham Company been preserved, plaintiff would have had a right to maintain an action against those corporations on the theory that they *161 exposed her deceased husband to the risk of injury by designing and manufacturing a defective vertical boring mill and "ram”. It is only because these corporations were consolidated and then merged with USM Corporation that plaintiff is now without the means to hold them directly accountable as third-party tort-feasors.
As previously noted, USM has not seriously disputed that it had succeeded to the liabilities ánd obligations of Consolidated and Farrel-Birmingham as a result of the 1968 merger (see Business Corporation Law, § 906, subd [b], par [3]). In effect, USM stands in the shoes of these two defunct corporations and, in the ordinary course of events, would be fully answerable to plaintiff for their tortious conduct. Under the circumstances of this case, we cannot accept USM’s contention that the obligations it inherited through corporate merger may be avoided simply because of the fortuity that the injured party was an employee covered by the provisions of the Workers’ Compensation Law. In short, we conclude that the exclusivity rule of section 11 is not available as a defense to a common-law tort action under these facts.
Conceptually, the deceased employee’s executrix is suing not the decedent’s former employer, but rather the successor to the liabilities of the two alleged tort-feasors. That USM also happens to have been the injured party’s employer is not of controlling significance, since the obligation upon which it is being sued arose not out of the employment relation, but rather out of an independent business transaction between USM and Farrel. What distinguishes this case from the "dual-capacity” cases discussed above is that here the tort in question was not committed by the employer or any of its agents; instead, the tort, if any, was committed by third parties, which, as it appears on the present record, never had an employer-employee relationship with the injured party. Since these third parties would have had no basis for invoking section 11 of the Workers’ Compensation Law as a defense in a common-law action brought against them by the employee or his dependents, USM, which stands in their shoes with respect to the question of liability, should similarly not be permitted to do so.*
*162 Through its merger with Consolidated and Parrel, USM voluntarily assumed any obligations that those corporations may have had to individuals who might suffer injury as a result of a defect in their product. It would be grossly inequitable to permit USM to avoid its assumed obligations solely because the injured party was coincidentally an employee and the injuries in question arose in the course of his employment. As we have already seen, the policies underlying the Workers’ Compensation Law do not extend so far as to preclude actions by an injured worker against a third-party manufacturer whose defective product has caused the injury. Inasmuch as plaintiff’s action represents essentially an attempt to recover from third-party manufacturers through a suit against their corporate successor, plaintiff should be permitted to maintain the action, notwithstanding that the successor corporation is also an employer which would otherwise be immune from suit under section 11. Accordingly, we hold that it was error for the courts below to dismiss plaintiff’s causes of action against USM on the basis of its status as employer.
We note that plaintiff had also named Emhart Corporation, USM’s parent, as a party defendant in the action. It was plaintiff’s position that Emhart should be answerable for the obligations of USM because its involvement in its subsidiary’s management was so extensive as to render the subsidiary a mere "alter ego” of the parent (see, generally, Berkey v Third Ave. Ry. Co., 244 NY 84; Lowendahl v Baltimore & Ohio R. R. Co., 247 App Div 144, affd 272 NY 360). Upon Emhart’s motion for summary judgment, the courts below dismissed the complaint against that corporation, but only because they had concluded that USM, upon which Emhart’s alleged liability was based, could not itself be held liable to plaintiff. Inasmuch as we have reached a contrary conclusion as to USM’s potential liability, we must now consider whether, assuming USM *163 to be liable, there are sufficient facts on the record to permit plaintiff to continue the action against Emhart.
As a general rule, the law treats corporations as having an existence separate and distinct from that of their shareholders and, consequently, will not impose liability upon shareholders for the acts of the corporation (Port Chester Elec. Constr. Corp. v Atlas, 40 NY2d 652, 656). Indeed, the avoidance of personal liability for obligations incurred by a business enterprise is one of the fundamental purposes of doing business in the corporate form (see Rapid Tr. Subway Constr. Co. v City of New York, 259 NY 472, 487-488). It is true that, on occasion, the courts will disregard the separate legal personality of the corporation and assign liability to its owners where necessary "to prevent fraud or to achieve equity” (International Aircraft Trading Co. v Manufacturers Trust Co., 297 NY 285, 292). But, such liability can never be predicated solely upon the fact of a parent corporation’s ownership of a controlling interest in the shares of its subsidiary. At the very least, there must be direct intervention by the parent in the management of the subsidiary to such an extent that "the subsidiary’s paraphernalia of incorporation, directors and officers” are completely ignored (Lowendahl v Baltimore & Ohio R. R. Co., 247 App Div 144, 155, affd 272 NY 360, supra).
Here, there has been no showing whatsoever that Emhart disregarded the separate identity of USM and involved itself directly in the affairs of that corporation. In response to Emhart’s moving papers, which assert that Emhart is merely a holding company with no employees involved in the management of USM, plaintiff has stated only that her claim against Emhart is "based on the fact that the defendant USM Corporation is [a] wholly-owned subsidiary [of Emhart]”. Of course, this fact alone would not be sufficient to support the imposition of liability upon Emhart for the acts of its subsidiary.
Nevertheless, plaintiff argues that a grant of summary judgment in favor of Emhart would be premature because it is still unclear whether "there is the necessary control exerted by the parent corporation to make it liable for the acts of its subsidiary”. Plaintiff further contends that additional discovery is "essential in this connection”. While it is true that CPLR 3212 (subd [f]) authorizes the court to deny summary judgment or grant a continuance pending discovery when "facts essential to justify opposition [to the motion] may exist *164 but cannot be stated”, we cannot conclude that such action would be warranted here, since plaintiff has given no indication as to what "essential” facts she believes exist that would justify a denial of Emhart’s motion to dismiss her complaint. Consequently, l^mhart is entitled to summary judgment on its motion.
Finally, we hold that the dismissal of the complaint as it pertained to defendants Consolidated Machine Tool Corporation, Farrel-Birmingham Company and Farrel Corporation was entirely proper. Those corporations had long since ceased to exist at the time the instant action was commenced, and there is no indication that there remain any assets or insurance coverage which would provide a source of recovery. Inasmuch as these corporations have been completely absorbed by USM, plaintiff’s sole remedy for any injuries resulting from their tortious conduct lies in an action against that corporate entity.
Accordingly, the order of the Appellate Division should be modified, with costs to plaintiff against USM Corporation, by reinstating plaintiff’s causes of action against USM Corporation in accordance with the opinion herein and, as so modified, affirmed, with costs to the remaining defendants against plaintiff.

 There is no record evidence that the decedent was ever employed by the predecessor corporations, Farrel-Birmingham and Consolidated. Moreover, inasmuch as Farrel was not the surviving corporation (Business Corporation Law, § 901, subd [b], par [4]), decedent’s subsequent employment by USM cannot be attributed to *162 Parrel. It is therefore unnecessary for us to consider or, indeed, to speculate whether USM Corporation would have inherited the immunity from suit which these corporations would have enjoyed had decedent been in their employ at some time prior to the merger (see Business Corporation Law, § 906, subd [b], par [1]). The dissenter’s reasoning to the contrary is unavailing. Inasmuch as Parrel never employed decedent Billy and, therefore, never invested in workers’ compensation insurance to cover injuries decedent might sustain during the course of his employment, it cannot be said, logically or legally, that section 11 of the Workers’ Compensation Law would have afforded Parrel any immunity from a lawsuit instituted on behalf of Billy; it follows that since Parrel possessed no "immunity” from such a suit, there was no immunity for USM to "inherit” in consequence of its ultimate merger with Parrel.