Ervin E. SCHWEINER, Jr., and Christine A. Schweiner,
Plaintiffs-Appellants,

v.

HARTFORD ACCIDENT & INDEMNITY Co., a foreign corporation, and Crouse-Hinds Arrow Hart, Inc., a foreign corporation, Defendants and Third-Party Plaintiffs and Co-Appellants,

ABC INSURANCE Co., and Robert Lombardo,
d/b/a Lombardo Electric Supply Co.,
a foreign corporation, Defendants,

The AETNA CASUALTY & SURETY Co.,
a foreign corporation, Defendant-Respondent,

THIEM CORPORATION, a foreign corporation,
Defendant and Third-Party Defendant-Respondent.†

Court of Appeals

*No. 83–2177. Submitted on briefs June 13, 1984.—
Decided July 24, 1984.*
(Also reported in 354 N.W.2d 767.)

† Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the briefs of *Goldberg, Previant, Uelmen, Gratz, Miller & Brueggeman, S.C.,* with *Virginia M. Antoine* of counsel, and *Dean M. Horwitz* of Milwaukee.

For the defendants and third-party plaintiffs and co-appellants the cause was submitted on the briefs of *Prosser, Wiedabach & Quale, S.C.,* with *David M. Quale* and *Gerald R. Harmon* of counsel, of Milwaukee.

For the defendants and third-party defendant-respondent the cause was submitted on the briefs of *Churchill, Duback & Smith,* with *John D. Bird, Jr.* and *David I. Cisar* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Moser, J., and Michael T. Sullivan, Reserve Judge.

WEDEMEYER, P.J. Ervin Schweiner, Christine Schweiner, Crouse-Hinds, and Hartford Accident & Indemnity Company appeal from a summary judgment granted to Thiem Corporation and its insurer, Aetna Casualty & Surety Company. The basis of the judgment is the immunity provided an employer (Thiem) from an employee's common-law tort action under sec. 102.03(2), Stats., of the Wisconsin Worker's Compensation Act. Because we conclude that the principle of immunity embodied in sec. 102.03(2) is inapplicable to the facts of this case, we reverse the judgment and order the claims asserted against Thiem reinstated.

## FACTUAL AND PROCEDURAL BACKGROUND

The undisputed facts and procedural history which give rise to this appeal are as follows: Ervin Schweiner began working at Thiem in April 1975. In January 1981, during the course of his employment, Schweiner sustained injuries when a molding machine malfunctioned. The machine was designed, manufactured, assembled and installed by Universal Refractories Corporation (Universal) during 1972 and 1973 at its Oak Creek, Wisconsin plant, exclusively for its own use. An electrical switch for the machine was manufactured by Crouse-Hinds and distributed by defendant Lombardo. From 1972 until December 1976, Universal owned and maintained the machine. Schweiner was never an employee of Universal.

In December 1976, Universal, a Wisconsin corporation and a subsidiary of Thiem, merged with Thiem. Delaware law was to govern Thiem; but as the surviving corporation, Thiem agreed in the articles of merger to

submit to process in Wisconsin for the enforcement of any obligation of Universal.

Following Schweiner's accident, he made a claim for worker's compensation benefits against Aetna, the worker's compensation carrier for Thiem. Aetna paid Schweiner more than $34,000 for his injury.

Next, the Schweiners commenced this action against Crouse-Hinds, Lombardo, and their liability insurer. Their claims were for common law negligence and strict liability relating to the design, manufacture and sale of the electrical switch. Crouse-Hinds and its liability insurer joined Thiem as a third-party defendant. They sought contribution from Thiem as successor to the liability of Universal for its negligent manufacture of the molding machine.

The Schweiners then amended their complaint to include Thiem. The basis for this claim was not any tortious conduct by Thiem, but rather its voluntary consent to the assumption of Universal's liability by reason of the Wisconsin statutory merger scheme.

Thiem and Aetna moved for summary judgment on the claims against them. The trial court granted their motion, relying on the immunity afforded an employer under sec. 102.03(2), Stats. It is from this judgment that the Schweiners and Crouse-Hinds appeal.

The cases citing the standard of review of an order granting or denying a summary judgment motion are legion and so well recognized that they do not bear repeating. Briefly stated, the reviewing court is to reverse the trial court's order for summary judgment only if the trial court incorrectly decided a question of law or if material facts are in dispute.

All parties agree that the material facts presented are not in dispute. Thus, the question posed is whether the trial court correctly decided the legal issue presented.

The Schweiners and Crouse-Hinds contend that their claims against Thiem are not barred by sec. 102.03(2),

Stats. To summarize their position, they argue that sec. 102.03(2) only immunizes an employer from liability arising out of the employer-employee relationship. Here, Thiem adopted a role other than employer when it merged with Universal and assumed Universal's obligation. Its relationship with and obligations to Schweiner under this new role are not governed by sec. 102.03(2), but should be considered identical to those Universal would have had if Universal had continued in existence. The theoretical basis for this argument is what is referred to as the "dual persona" doctrine.

In reply, Thiem contends that the "exclusive remedy" principle of sec. 102.03(2), Stats., extends to all work-related injuries, leaving no room for consideration of any factors other than the relationship of the injured party to the alleged negligent party at the time of the action. The only exception Thiem concedes would be an express indemnification agreement, which, it argues, was not created by nor can be inferred from the fact of the merger. For reasons we now set forth, we are not persuaded by Thiem's line of reasoning.

We begin by noting that, assuming proof of negligence, Universal could have been subject to liability for Schweiner's accident as a third party, pursuant to sec. 102.29(1), Stats., had it not been merged into Thiem.[1] We next examine the basis for burdening Thiem with

---

[1] Section 102.29(1), Stats., provides in part:

(1) The making of a claim for compensation against an employer or compensation insurer for the injury or death of an employe shall not affect the right of the employe, the employe's personal representative, or other person entitled to bring action, to make claim or maintain an action in tort against any other party for such injury or death, hereinafter referred to as a 3rd party; nor shall the making of a claim by any such person against a 3rd party for damages by reason of an injury to which ss. 102.03 to 102.64 are applicable, or the adjustment of any such claim, affect the right of the injured employe or the employe's dependents to recover compensation.

Universal's potential liabilities, which we find in Wisconsin's corporate merger law. The supreme court has stated that: "It is well established that there can be no consolidation or merger of independent corporations in the absence of legislative authority, any more than there can be an original corporation without legislative sanction." *St. Thomas Gemeinde v. St. Matthews Church,* 191 Wis. 340, 344, 210 N.W. 942, 943–44 (1926). "Those who would enjoy the benefits that attend the corporate form of operation are obliged to conduct their affairs in accordance with the laws which authorized them." *Village of Brown Deer v. City of Milwaukee,* 16 Wis. 2d 206, 213, 114 N.W.2d 493, 497, *cert. denied,* 371 U.S. 902 (1962). Thus, it follows that with the exception of de facto occurrences, recognized by courts to avoid defeating the purpose of the statutes, corporations cannot merge under Wisconsin law unless they voluntarily consent to comply with the requirements contained in the state statutes.[2]

Section 180.67 (2), (4), (5), Stats., provides in part:

When any merger or consolidation has been effected in accordance with this chapter:

. . . .

(2) The separate existence of all corporations parties to the plan of merger or consolidation, except the surviving or new corporation, shall cease.

. . . .

(4) Such surviving or new corporation shall thereupon and thereafter possess all the rights, privileges, immunities, and franchises, as well of a public as of a

---

[2] A merger ordinarily is an absorption by one corporation of another whose stock it has acquired. The general characteristics of a merger include the transfer of all of a corporation's assets in exchange for stock, the dissolution of one of the corporations, a continuing interest of the shareholders of the absorbed corporation in the survivor and a broad assumption of the absorbed corporation's liabilities by the survivor. *See* 15 C. Thompson, *Fletcher Cyclopedia on the Law of Private Corporations* § 7041 (1983).

private nature, of each of the merging or consolidating corporations; . . .

(5) Such surviving or new corporation shall thenceforth be responsible and liable for all the liabilities and obligations of each of the corporations so merged or consolidated; and any claim existing or action or proceeding pending by or against any of such corporations may be prosecuted to judgment as if such merger or consolidation had not taken place, or such surviving or new corporation may be substituted in its place. Neither the rights of creditors nor any liens upon the property of any such corporation shall be impaired by such merger or consolidation.

The language of sec. 180.67 (2), (4), (5), Stats., given its ordinary and reasonable meaning, is clear and unambiguous. Our legislature, as a matter of public policy, has determined that, as a condition of effectuating a statutory merger, the successor or surviving corporation will be responsible for any and all of the liabilities of the merged corporation. Other authorities agree with our view. These subsections are identical in substance to sec. 76(b), (d), (e) of the Model Business Corporation Act.[3]

---

[3] The *Model Business Corp. Act Annot.* § 76 (2d ed. 1971) states in part:

(b) The separate existence of all corporations parties to the plan of merger or consolidation, except the surviving or new corporation, shall cease.

. . . .

(d) Such surviving or new corporation shall thereupon and thereafter possess all the rights, privileges, immunities, and franchises, of a public as well as of a private nature, of each of the merging or consolidating corporations; . . .

(e) Such surviving or new corporation shall thenceforth be responsible and liable for all the liabilities and obligations of each of the corporations so merged or consolidated; and any claim existing or action or proceeding pending by or against any of such corporations may be prosecuted as if such merger or consolidation had not taken place, or such surviving or new corporation may be substituted in its place. Neither the rights of creditors nor any

An accompanying note to the Model Act explains in part, "The surviving corporation named in the plan of merger . . . then possesses all the assets and rights and succeeds to all the liabilities of the constituent corporations." 2 *Model Business Corp. Act Annot.* sec. 76, para. 2 (2d ed. 1971).

Other states which have had occasion to review the same or equivalent statutory language have also acknowledged the provision's clear import. *See, e.g., Fitzsimmons v. Western Airlines, Inc.,* 290 A.2d 682 (Del. Ch. 1972); *Board of Education v. Herzog Building Corp.,* 190 N.E.2d 152 (Ill. App. 1963). In *Herzog,* the Illinois court, construing language identical to sec. 180.67(5), Stats., in Illinois' Business Corporation Act, declared that the provisions "are clear and explicit; it would be a travesty on justice and pervert the intent of the statute if a corporation could rid itself of its obligations by merging with another corporation . . . ." *Id.* at 154.

While not addressing the statute itself, this court has addressed the underlying policy issue. In *Tift v. Forage King Industries, Inc.,* 102 Wis. 2d 327, 331, 306 N.W.2d 289, 291 (Ct. App. 1981), *rev'd on other grounds,* 108 Wis. 2d 72, 322 N.W.2d 14 (1982), this court observed:

When a corporation is purchased by a second corporation, the first disappears as a legal entity and, consequently, cannot be sued. The policy behind imposing liability on the purchasing corporation is based on the rationale that no corporation should be permitted to place into the stream of commerce a defective product and avoid liability through corporate transformations or changes in form only. [Footnote omitted.]

In *Tift* we indicated that as between the purchasing and purchased corporation:

liens upon the property of any such corporation shall be impaired by such merger or consolidation.

Liability may be imposed upon the purchasing corporation . . . by applying four well-recognized exceptions to the general rule: (1) if the purchasing corporation expressly or impliedly agreed to assume the selling corporation's liability; (2) *if the transaction amounts to a consolidation or merger of the purchaser and seller corporations;* (3) if the purchaser corporation is merely a continuation of the seller corporation; or (4) if the transaction is entered into fraudulently to escape liability for such obligation. [Emphasis added, footnote omitted.]

*Id.* at 330, 306 N.W.2d at 291.

Having concluded that Thiem assumed the obligations and liabilities of Universal by statutory merger, we here adopt the "dual persona" concept, acknowledging Thiem's responsibilities as the merger survivor separate from those as corporate employer.

This concept of duality has been articulated in the writings of the encyclopedist Arthur Larson, who has entitled it the doctrine of "dual persona." 2A A. Larson, *Workmen's Compensation Law* sec. 72.80 (1983). Professor Larson explains it as follows: "An employer may become a third person, vulnerable to tort suit by an employee, if—and only if—he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person." *Id.* at sec. 72.8.

Larson distinguishes his concept from the broader "dual capacity" doctrine, noting the amorphic characteristic of the term "capacity" and the threat it posed to the theoretical underpinnings of the worker's compensation principle of employer immunity. *Id.* To Larson, the central issue of attention is therefore not how separate or different the second function of the corporation is from the first, but whether the second function generates obligations unrelated to those flowing from the first, that of the employer. A separate capacity or theory of

liability is not sufficient. Instead, there must exist a duality or, in other words, a separate and distinct legal person. Larson notes that "the duality may be one firmly entrenched in common law or equity," or "may also be created by modern statute." *Id.*

As a leading example, Larson cites *Billy v. Consolidated Machine Tool Corp.*, 412 N.E.2d 934 (N.Y. 1980). In *Billy*, the plaintiff's spouse was killed by machinery in his place of employment. The machinery was manufactured by a corporation which had merged with the decedent's employer prior to the incident. The decedent was never employed by the manufacturer of the equipment. Although receiving worker's compensation, the widow sued the employer in tort on the theory that statutory merger caused it to assume all of the obligations and liabilities of the merged corporation. In short, the facts correspond to those before us in material part.

In sustaining the claimant's cause of action, although rejecting the overly expansive "dual capacity test" in other situations, the *Billy* court recognized that an employer may have a separate legal personality stemming from a merger and may, therefore, be liable to an employee for injuries incurred in the workplace if the merged corporation would have been liable. The court rejected the argument that obligations inherited through merger "may be avoided simply because of the fortuity that the injured party was an employee covered by the provisions of the Worker's Compensation Law." *Id.* at 940. Larson refers to *Billy* as "a genuine case of separate legal personality." Larson, *supra.*

Although the doctrine of dual persona has yet to be applied in Wisconsin in reference to worker's compensation-employer immunity, its primogenitor, "dual capacity," has been considered and examined. *See Jenkins v. Sabourin*, 104 Wis. 2d 309, 311 N.W.2d 600 (1981); *Gerger v. Campbell*, 98 Wis. 2d 282, 297 N.W.2d 183 (1980). In *Gerger*, the supreme court did "not conclude

that the dual-capacity doctrine may not appropriately circumvent the immunity under the exclusive-remedy test in a proper case," but decided that the case before it was not appropriate. *Id.* at 293, 297 N.W.2d at 188. Given the undisputed facts of this case, we are convinced the time for its application has arrived.

We conclude that it was within the intention of sec. 180.67(5), Stats., that although there was a cessation of Universal's corporate form, its existence for the purposes of assuming liability was engrafted by statute onto Thiem. We conclude that the legislative purpose would remain unfulfilled if the language did not include the liability for the possible negligent acts of Universal regardless of the relationship of Thiem to the injured party. We further conclude that the legislature never intended the Worker's Compensation Act to immunize the employer from liability for obligations arising from a source other than its role as an employer. For the above reasons, we conclude that the trial court, in granting summary judgment, erred as a matter of law.

*By the Court.*—Judgment and order reversed and cause remanded with directions.