[No. 9852–4–III. Division Three. April 5, 1990.]

DOUGLAS K. DuVON, *Respondent*, v. ROCKWELL INTERNA-TIONAL CORPORATION, *Petitioner*.

*Robert S. Gruhn* and *Davis, Wright & Jones,* for petitioner.

*David Williams* and *Critchlow & Williams,* for respondent.

THOMPSON, J.—Robert DuVon brought this negligence action against Rockwell International, his former employer, for damages for injuries he incurred at work when a machine manufactured by Rockwell allegedly malfunctioned.[1] At the time of the accident, Mr. DuVon worked for Westinghouse Hanford Company, which had succeeded Rockwell just 5 days before as the government contractor on the Hanford Project. Rockwell unsuccessfully moved for summary dismissal, contending that Mr. DuVon's exclusive remedy was workers' compensation. We granted discretionary review to consider whether the policy expressed in *Corr v. Willamette Indus., Inc.,* 105 Wn.2d 217, 223, 713 P.2d 92 (1986) precludes Mr. DuVon's action. We hold that *Corr* is distinguishable and affirm.

Willamette Industries, the defendant in *Corr,* had absorbed Corco, Inc., in a 1977 merger. It acquired Corco's plant and inventory, including two bulk bin compressor

---

[1]Specifically, Mr. DuVon was exposed on July 3, 1987, to strong, ammonia-like fumes from a portable exhauster. Rockwell had built and installed the portable exhauster which, under the terms of its contract with the government, became government property. The critique report of the incident by Westinghouse identified several causes of the accident, including:

The sampling system on the portable exhauster provided a condition for localized high concentration of non–filterable gas. Procedure TO–060–330 did not provide adequate guidance to shut the exhauster inlet butterfly valve when ventilation system is down due to system failure.

According to Mr. DuVon:

For at least two years ammonia–like odors have been present in different locations of east tank farms. This issue has been brought up as a safety concern and passed through Rockwell management. Each time it has been brought up nothing was done or Rockwell management said it is OK to be and work in and is not dangerous.

units which had been designed and built by Corco employees and used exclusively in Corco's manufacture of cardboard boxes. Willamette also succeeded to all of Corco's liabilities and obligations.

In 1980, Willamette's subsidiary employed Mr. Corr, who subsequently was injured while cleaning one of the bulk bin compressor units. Mr. Corr initiated a products liability action against Willamette, but the action was dismissed on the ground that the workers' compensation act provided the exclusive remedy to an injured employee.

On appeal, Mr. Corr contended that Willamette was a third person under RCW 51.24.030, citing the dual persona doctrine. Under that doctrine, "[a]n employer may become a third person, vulnerable to tort suit by an employee, if—and only if—he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate person." *Corr,* at 220–21 (quoting 2A A. Larson, *Workmen's Compensation* § 72.81 (1983)). Stated differently, the employee is not suing his employer, but rather the successor to the liabilities of the alleged tortfeasor. *Corr,* at 221. The obligation arises out of an independent business transaction, not the employment relationship. *See Kimzey v. Interpace Corp., Inc.,* 10 Kan. App. 2d 165, 694 P.2d 907 (1985); *Billy v. Consolidated Mach. Tool Corp.,* 51 N.Y.2d 152, 412 N.E.2d 934, 432 N.Y.S.2d 879 (1980); *Schweiner v. Hartford Accident & Indem. Co.,* 120 Wis. 2d 344, 354 N.W.2d 767 (Ct. App. 1984) for cases applying the dual persona doctrine in the context of corporate mergers.

The court was not persuaded that the doctrine applied in the circumstances presented in *Corr.* It stated at pages 222–23:

> The doctrine rests on the premise that if the merging corporations had not merged, the injured claimant could have sued the manufacturing corporation as a third person tortfeasor. Under the facts of this case, however, an injured claimant never could

have sued Corco as a third person because Corco had no liabilities or obligations flowing to Willamette's employees. The two bulk bin compressor units were not manufactured for resale or entry into the stream of commerce. From the time of installation until merger, both units remained in Corco's workplace.

Only by virtue of the merger did the defective plant equipment transfer from Corco to Willamette. Thus, absent the merger, Corr could have been injured by this machinery only if he had been an employee of Corco. As an employee of Corco, however, Corr would be limited to the exclusive remedies of the workers' compensation act. . . . Because Corco could not be subject to third person liability, such liability cannot be imposed upon Willamette simply because the two corporations merged.

(Citations omitted.)[2]

Rockwell contends that *Corr*'s "stream of commerce" theory is applicable to the situation here. According to Rockwell, it never placed the allegedly defective equipment in the stream of commerce; thus, it never owed obligations relative to the equipment to persons other than its employees. Rockwell argues that an obligation cannot now arise simply because Westinghouse has succeeded it as the government contractor at the Hanford Project.

 Rockwell's comparisons ignore the fact that the plaintiff in *Corr* was suing his employer; Mr. DuVon is not. The reasons given in *Corr* for not allowing an injured worker to sue his *present* employer do not justify protecting *former* employers from actions based on torts committed after the employment relationship has ended. At least two cases from other jurisdictions support this conclusion.

---

[2]Justice Dore dissented, noting:

"The majority's addition of a 'stream of commerce' element to the doctrine is unfounded. . . . This element is not addressed in any of the three opinions adopting the dual persona doctrine, nor is it an element of the cause of action as defined by Professor Larson. . . . It *is not placing the plant equipment in the stream of commerce which creates the possibility of third party liability, however, but the contractual and statutory liabilities assumed by a successor corporation which imposes third party liability.* . . . We are not concerned with whether Corr could have come in contact with the plant equipment absent the merger. He in fact did come into contact with the bulk bin compressor and his employer, Willamette, had assumed the manufacturer's obligations for injuries caused by its equipment." (Italics ours.) *Corr,* at 227.

*Konken v. Oakland Farmers' Elevator Co.*, 425 N.W.2d 302 (Minn. Ct. App. 1988); *Hull v. Aurora Corp.*, 89 A.D.2d 681, 454 N.Y.S.2d 39 (1982).

In *Hull,* the plaintiff was injured while operating a casting machine for his employer, F&R Die Castings Co., Inc. F&R had acquired the machine and the plant from defendant Aurora Corporation in 1976. The plaintiff had been an employee of Aurora prior to the acquisition. The court upheld the denial of Aurora's motion for summary judgment, stating in 89 A.D.2d at 682:

> [W]e do not see how Aurora can attempt to use section 11 of the Workers' Compensation Law as a defense since plaintiff's injury did not arise "out of and in the course of" his employment with Aurora (Workers' Compensation Law, § 10). In this common–law action brought for injuries sustained in 1978, Aurora and its related business entities stand as third parties rather than employers in relation to plaintiff and thus cannot use the fortuity of a prior employment relationship as the basis for invoking section 11 as a defense.

In *Konken,* the plaintiff, while in the employ of Land O' Lakes, was injured by a machine installed by his former employer, Oakland Farmers' Elevators. The court refused to dismiss an action against Oakland, reasoning in 425 N.W.2d at 305:

> The [Workers' Compensation] Act defines "employer" as "any person who employs another to perform a service for hire." Minn.Stat. § 176.011, subd. 10. The definition is cast in the present tense and would not appear to include a former employer whose contractual relationship with the employee has ended and who no longer employs the worker "to perform a service for hire." Absent an express legislative intention to extend the restriction on causes of action against former employers, we are reluctant to do so.
>
> This analysis is consistent with policies of the Act. The third–party action is generally permitted because, "as between the employee and the stranger, there has been no such give and take." 2A A. Larson, *The Law of Workmen's Compensation,* § 71.20 (1988). Stated differently,
>
>> [u]nder the Minnesota Act the employer is liable without fault but is immune from common law action. On the other hand, a "person other than the employer" is liable to the employee only if at fault and has available to him all common law defenses. The scheme of the compensation act is

reciprocity. As long as the employer is stripped of his common law defenses and is liable without fault, he is subject only to exclusive statutory liability. A third person, other than the employer's compensation insurer, is subject to no burdens of the act and consequently, under the scheme of reciprocity, is entitled to no benefits of the act.

Konken's accident did not arise out of and in the course of his employment with Oakland, *i.e.*, there was no causal connection between Konken's injury and the previous employment relationship. "Konken could have been injured at LOLI whether or not he had been employed by Oakland." *Konken*, 425 N.W.2d at 305. Thus, Oakland incurred no obligation to pay workers' compensation benefits for Konken's injury. Conversely, Oakland was not entitled to the beneficial immunity from Konken's common law claims provided by the act.

Like the Minnesota statute, the Washington statute defining "employer" is cast in the present tense, suggesting former employers are not included. RCW 51.08.070. As in Minnesota, the policy of the Washington act is to provide the injured worker with relief regardless of fault in return for abolition of common law rights of action. RCW 51.04-.010. If Rockwell is allowed to use the workers' compensation act as a defense, it reaps the benefit of the act without being responsible for paying workers' compensation benefits to Mr. DuVon. Finally, there exists no causal connection between Mr. DuVon's injury and his previous employment by Rockwell; he could have been injured whether or not he had been employed by Rockwell.

We hold that *Corr* is distinguishable on the material facts. The court properly denied Rockwell's motion for summary judgment.[3]

---

[3]Rockwell also argues Mr. DuVon's action against it is for products liability. Rockwell asserts it does not come within the statutory definitions of product seller or manufacturer. This is a separate issue from that which the trial court ruled upon. A fair answer would require briefing by both parties and, thus, is not a proper subject for this court to address now.

Affirmed.

MUNSON, C.J., and GREEN, J., concur.

Review granted at 115 Wn.2d 1001 (1990).