290 N.J. Super. 434 (1996)
675 A.2d 1194
ARSENIO VEGA, PLAINTIFF-APPELLANT,
v.
STANDARD MACHINERY CO. OF AUBURN, RHODE ISLAND, SHIMAR INDUSTRIES, INC., AND SHIMAN & CO., A/K/A SHIMAN INDUSTRIES, INC., A/K/A SHIMAN MANUFACTURING CO., INC., DEFENDANTS, AND KREMENTZ & CO., A/K/A KREMENTZ JEWELRY & CO., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 7, 1996.
Decided May 21, 1996.
*435 Before BAIME, KIMMELMAN and BILDER, JJ.
Alan D. Bell argued the cause for appellant.
Guy M. Magnusson argued the cause for respondent (Henry S. Buchanan, attorney; Mr. Magnusson, on the brief).
The opinion of the court was delivered by KIMMELMAN, J.A.D. (temporarily assigned).
Plaintiff Arsenio Vega, an employee of defendant Krementz & Company (Krementz), was injured on March 15, 1991, in Krementz's *436 plant when the drop hammer on a punch-press die machine plaintiff was operating unexpectedly came down when a belt failed, amputating part of his thumb and crushing two fingers on his dominant right hand. Plaintiff received a workers' compensation award, but instituted this action to recover damages against the manufacturer of the machine (who could not be located for service of process) and against defendants Shiman Industries, Inc. (Shiman) and Krementz. Krementz was joined in the action not as plaintiff's employer but as the party responsible for Shiman's liabilities as a result of their merger prior to the accident. The jury returned a verdict of $25,000 in favor of plaintiff and against Krementz even though the parties had stipulated that plaintiff's out-of-pocket losses for medical expenses and lost wages were $45,855.32. On plaintiff's motion for a new trial as to damages and Krementz's cross-motion for judgment notwithstanding the verdict, the trial court granted Krementz's cross-motion, set aside the jury's verdict, and entered judgment in favor of Krementz, dismissing plaintiff's complaint. Plaintiff now appeals from that judgment.

I
The factual background need only be recounted briefly. Both Shiman and Krementz were in the business of manufacturing jewelry. Many years ago, Shiman purchased the machine in question from its manufacturer and had used the same in its business. Krementz, the owner of all of the outstanding shares of Shiman, operated Shiman as a wholly-owned subsidiary. On December 16, 1986, the two corporations entered into a plan of merger whereby the subsidiary corporation was to be merged into the parent, and on December 29, 1986, Krementz, as the surviving corporation, filed a certificate of merger with the Secretary of State of New Jersey. The ownership of Shiman's property, including the machine in question, thereby vested in Krementz. As required by law, Krementz agreed in the plan of merger to be *437 liable for all of the obligations and liabilities of Shiman. See N.J.S.A. 14A:10-6(e).
Plaintiff's case was premised on a negligence theory that, in connection with the merger, Shiman had a duty to warn Krementz and its employees about the dangerous condition of the machine and that warning notices or labels should have been affixed to the machine. In answers to special verdict questions, the six-member jury unanimously found that Shiman was negligent in not providing an adequate guard on the machine at the point of operation and in failing to provide a warning notice on the machine, and further found that Shiman should have been aware of the dangerous condition of the machine.
In seeking to impose liability on Krementz as Shiman's successor in interest, plaintiff contends that Shiman was the "supplier" of the machine and relies upon Restatement (Second) of Torts § 388 (1965), entitled "Chattel Known to Be Dangerous for Intended Use," which provides:
One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.
The trial judge, in setting aside the verdict and entering judgment in favor of Krementz, concluded "that the dangerous condition of the machine was open and notorious and that when Krementz took the machine, it did so with full knowledge of its defects," so that if there was a duty on the part of Shiman to warn the employees of Krementz, there was no breach of that duty by Shiman. Apparently, the trial judge reasoned that contrary to subsection (b) of Section 388 of the Restatement (Second) of Torts, Shiman had reason to believe that Krementz would have or should *438 have realized the dangerous condition of the machine because its defects were open and notorious, and, as a consequence, Shiman was relieved from having a duty to warn; thus, Shiman had no liability by virtue of Section 388.
We express no opinion as to whether Shiman did or did not have a duty to warn of the allegedly-obvious or visibly-discernible dangers inherent in the condition of the machine. We do not subscribe to the trial judge's reasons, but, nevertheless, limited to the peculiar facts and circumstances of this case, we agree that the jury verdict should have been set aside and judgment entered in favor of Krementz by reason of the merger of the two corporations. See Walker v. Briarwood Condo Ass'n, 274 N.J. Super. 422, 426, 644 A.2d 634 (App.Div. 1994). We hold that Shiman was not a supplier or seller of the machine.

II
Under New Jersey law, the Workers' Compensation Act ("the Act"), N.J.S.A. 34:15-1 to -128, is the exclusive remedy afforded an employee injured in the course of his employment. N.J.S.A. 34:15-8. The case of Wilson v. Faull, 27 N.J. 105, 141 A.2d 768 (1958), succinctly sets forth the reasons for the exclusiveness of the remedy:
Workmen's compensation laws were designed to provide an expeditious and certain remedy for employees who sustain work injuries by the statutory imposition of absolute but limited and determinate liability upon the employer. These laws generally provide that the compensation remedy is exclusive. The theory behind this exclusiveness is that the laws provide predictable compensation for any on the job injury. They represent a compromise that inures to the ultimate benefit of both employer and employee. The employee surrenders his right to seek damages in an action at law in return for swift recovery independent of proof of fault. The employer gives up common law defenses to negligence suits and assumes an absolute liability to provide compensation; in return he is granted immunity from common law negligence suits by his employees.
[Id. at 116, 141 A.2d 768 (citations omitted); see also Cellucci v. Bronstein, 277 N.J. Super. 506, 517-18, 649 A.2d 1333 (App.Div. 1994), certif. denied, 139 N.J. 441, 655 A.2d 444 (1995).]
However, an employee's common law remedy is not affected by an injury attributable to a cause not falling within the *439 purview of the Workers' Compensation Act. Imre v. Riegel Paper Corp., 24 N.J. 438, 450, 132 A.2d 505 (1957). The Act's exclusivity provisions do not preclude maintenance of an action for damages against a third-party tortfeasor who may be responsible, in whole or in part, for the employee's injuries. N.J.S.A. 34:15-40; see also Lyon v. Barrett, 89 N.J. 294, 304-05, 445 A.2d 1153 (1982). Accordingly, plaintiff focused upon Shiman as the tortfeasor. Shiman was not plaintiff's employer, but was a previous owner of the machine.
Plaintiff argues that the exclusivity of the workers' compensation remedy does not bar his suit against Krementz because Krementz was not sued for its own negligence, but rather because it was vicariously liable as a successor corporation by operation of law when it acquired Shiman. Plaintiff places reliance on Petrocco v. AT & T Teletype, Inc., 273 N.J. Super. 613, 642 A.2d 1072 (Law Div. 1994), where the exclusivity remedy was held not to bar an injured employee of the surviving parent corporation from suing a subsidiary corporation later absorbed into the corporate parent by merger, where the subsidiary corporation had manufactured an allegedly-defective keyboard. The Law Division reasoned as follows:
To allow the defendant to hide behind the exclusive remedy provision in this situation would effectively allow a manufacturer who had already put defective products into the stream of commerce to shield itself from injuries those products may later cause by virtue of subsequently entering into a business transaction with someone other than the injured party. The exclusive remedy provision of the Workers' Compensation Act was not intended to immunize a third-party manufacturer in such a situation.
[Id. at 616, 642 A.2d 1072.]
The instant matter is immediately distinguishable. Here, Shiman was not the manufacturer of the allegedly-defective machine, and it did not introduce the machine into the stream of commerce. Thus, Shiman was not the tortfeasor responsible for the creation of the defective machine.
Consequently, the case of Billy v. Consolidated Machine Tool Corp., 51 N.Y.2d 152, 432 N.Y.S.2d 879, 412 N.E.2d 934 (1980), *440 relied upon by the court in Petrocco, supra, is likewise inapplicable. There, the Court of Appeals of New York allowed the widow of an employee killed by an allegedly-defective machine, after receiving workers' compensation, to sue the employer as the successor in interest to a subsidiary corporation it had absorbed by merger, where prior to the merger the subsidiary corporation had designed and manufactured the machine. Again, in the case at bar, Shiman did not design or manufacture the allegedly defective machine.
Plaintiff's negligence claim is barred by the Workers' Compensation Act.

III
Apart from not having actually created the allegedly-defective machine as its designer or manufacturer, Shiman was not a supplier or seller of the machine to Krementz in the sense of an ordinary commercial or business transaction. A merger of two corporations, such as a subsidiary into a parent, as is the case here, does not give rise to a sale or to the commercial supply of the personal property or chattels affected by the transaction.
In common legal usage and as generally understood, a "sale" consists in the passing of title of goods from the seller to the buyer for a price. N.J.S.A. 12A:2-106(1). In a merger, the ownership of assets, both real and personal, in the sense of title, is transferred by operation of law to the surviving corporation, but that is not the same as a sale in the ordinary sense. Sterling v. Mayflower Hotel Corp., 93 A.2d 107, 112 (Del. 1952). No bill of sale or receipt evidences the transaction or transfer of title as might be expected in the ordinary commercial sense.
A merging of two corporations "contemplates that one will be absorbed by the other and go out of existence, but the absorbing corporation will remain" as the surviving corporation pursuant to the plan of merger. Applestein v. United Bd. & Carton Corp., 60 N.J. Super. 333, 342, 159 A.2d 146 (Ch.Div.), aff'd, *441 33 N.J. 72, 161 A.2d 474 (1960). By operation of law, all property, both real and personal, belonging to each of the merging corporations becomes vested in the surviving corporation, without any further act or deed. N.J.S.A. 14A:10-6(d). Thus, title passes automatically upon the filing of the certificate of merger in the Office of the Secretary of State. N.J.S.A. 14A:10-4.1(2). No price is paid. Consideration does not pass between the surviving parent corporation and its wholly-owned subsidiary, which is absorbed. Its existence ceases, N.J.S.A. 14A:10-6(b), and its liabilities become the obligation of the surviving parent. N.J.S.A. 14A:10-6(e).
In sum, it cannot be said that Shiman was a seller or supplier of the machinery within the purview of Restatement (Second) of Torts § 388, or within the purview of the Uniform Commercial Code. The machine's original manufacturer, not Shiman, introduced the allegedly-defective machine into the stream of commerce.
For the foregoing reasons, the judgment from which plaintiff appealed is affirmed.