777 A.2d 941 (2001)
342 N.J. Super. 580
Delfina KACZOROWSKA, Plaintiff-Appellant,
v.
NATIONAL ENVELOPE CORPORATION-East and National Envelope Corporation, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted May 9, 2001.
Decided June 1, 2001.
*943 Eichen, Cahn & Parra, attorneys for appellant (Barry R. Eichen, Edison, and Michael B. Lynch, of counsel and on the brief).
Lester Schwab Katz & Dwyer, New York City, attorneys for respondents (Scott L. Haworth, on the brief).
Before Judges WALLACE, Jr., CARCHMAN and PARRILLO.
*942 The opinion of the court was delivered by PARRILLO, J.S.C. (temporarily assigned).
Plaintiff Delfina Kaczorowska appeals the dismissal of her complaint against her employer, defendant National Envelope Corporation-East (NEC-East), and its parent, defendant National Envelope Corporation (NEC). Because matters beyond the pleadings were considered below, we analyze the viability of plaintiff's claims of liability against defendants under the summary judgment standard of Rule 4:46-2. See R. 4:6-2. We affirm.
On January 30, 1998, plaintiff suffered a catastrophic amputation workplace injury. While walking towards another machine on which she was assigned to work, plaintiff tripped and fell over boxes in the aisle and got her arm entrapped in an unguarded timing/drive belt on a Latex 1 envelopegluing machine. The original machine was designed and manufactured by New Jersey Machine Company who sold it to Envelope Converters, Inc. on February 1, 1971. Envelope Converters, Inc. was subsequently purchased by New York Envelope Corporation, which in 1993 became known as National Envelope Corporation (NEC), the parent company of plaintiff's employer. Back in 1981, NEC acquired another of its competitors, Champion Envelope *944 Corporation, which in 1994 changed its name to National Envelope Corporation-East (NEC-East), plaintiff's employer and a wholly owned subsidiary of NEC.
Shortly after the Latex 1 adhesive machine was sold, New Jersey Machine shipped to Envelope Converters, Inc. three perimeter guards to cover the unit's heating lamps. Two of the guards were installed on the rear of the machine; the third, on the side of the machine where the accident occurred. None of the three guards were on the machine at the time of the accident. Two of the guards were observed lying alongside of the machine after the accident.
The initial design of the Latex 1 machine had been adapted to facilitate an attachment used to produce "peel and seal" envelopes, a function the machine was not originally designed to perform. The "peel and seal" attachment was designed by an employee of Champion Envelope Corporation, Al Bruno, sometime after the company's acquisition by NEC in 1981 and before its name change to NEC-East. To operate the "peel and seal" attachment, modifications were made to the original machine by Bruno including installation of a gear box, drive shaft, timing belt and several pulleys. At the time of the accident, the "peel and seal" attachment was not being used; however, one of the timing belts was left hanging from a rotating drive shaft. Plaintiff's right arm became entangled in the unguarded, hanging timing belt.
Plaintiff originally sued New Jersey Machine and named NEC East as a defendant for the sole purpose of discovery. She then moved to amend her complaint to include NEC-East as a proper defendant, to include its parent corporation, NEC, as a defendant, and to assert the "intentional wrong" exception to the Workers' Compensation Act (Act) as a theory of liability. After a hearing on plaintiff's motion on November 5, 1999, Judge Sachar entered an order on March 3, 2000 granting plaintiff leave to amend her complaint adding NEC-East and NEC as defendants but specifically restricting her from including therein a count asserting the "intentional wrong" exception to the Act's exclusivity bar.
On March 14, 2000, plaintiff filed an amended complaint asserting claims against her employer NEC-East based upon the so-called "dual capacity" doctrine[1] and against her employer's parent, NEC, based on successor liability.[2] On *945 June 9, 2000, Judge Sachar granted New Jersey Machine's motion for summary judgment as well as NEC-East and NEC's motion to dismiss all four counts of plaintiff's complaint against them. Plaintiff appeals from this decision as well as Judge Sachar's earlier ruling precluding a claim against NEC-East alleging "intentional wrongdoing." We will discuss the latter first.[3]

i
Plaintiff argues that her employer's removal of safety guards from the Latex 1 adhesive machine was an "intentional wrong" excepted from the Workers' Compensation Act's (Act) exclusivity bar. The Act precludes an employee injured during the course of employment from asserting a cause of action against her employer beyond the remedy provided therein, N.J.S.A. 34:15-8, unless the employer's action was an "intentional wrong." N.J.S.A. 34:15-9. However, to further its underlying principle to process as many work-related disability claims as possible exclusively within the Act, the "intentional wrong" exception must be construed very narrowly. Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 177, 501 A.2d 505 (1985); Laidlow v. Hariton Machinery Co., Inc., 335 N.J.Super. 330, 338, 762 A.2d 311 (App.Div.2000), certif. denied, N.J. (2001);[4]Bustamante v. Tuliano, 248 N.J.Super. 492, 498-499, 591 A.2d 694 (App.Div.), certif. denied, 126 N.J. 385, 599 A.2d 162 (1991).
Even an injury "caused by either gross negligence or an abysmal lack of concern for the safety of employees" is insufficient to satisfy the "intentional wrong" exception. Marinelli v. Mitts & Merrill, 303 N.J.Super. 61, 72, 696 A.2d 55 (App.Div.1997). See also Millison, supra, 101 N.J. at 171-73, 501 A.2d 505. Rather, the level of intent sufficient to overcome the exclusivity of the Act is a "deliberate intention to injure." Mabee v. Borden, Inc., 316 N.J.Super. 218, 227, 720 A.2d 342 (App.Div.1998) (internal citations and quotations omitted). An employer acts with such an intent when he "desires to cause consequences of his act or is substantially certain that such consequences will result from his actions." Millison, supra, 101 N.J. at 178, 501 A.2d 505 (quoting from Restatement 2d of Torts § 8A).
Thus, "[t]he employee may prove `intent to injure' not only by evidence of the employer's actual intent to injure, but also by circumstances where the employer knows an injury is a substantial or virtual certainty." Mabee v. Borden, Inc., supra, 316 N.J.Super. at 227, 720 A.2d 342 (quoting New Jersey Manufacturers Insurance Co. v. Joseph Oat Corp., 287 N.J.Super. 190, 197, 670 A.2d 1071 (App.Div.1995)). As the court in Millison, supra, emphasized, *946 "the dividing line between negligent or reckless conduct on the one hand and intentional wrong on the other must be drawn with caution [as] ... [w]e must demand a virtual certainty." Id. at 178, 501 A.2d 505.
An employer's removal of a safety device does not present a per se prima facie case of an "intentional wrong." Id. at 171, 501 A.2d 505 (internal citation omitted); Mabee, supra, 316 N.J.Super. at 230-231, 720 A.2d 342. Instead, the determination is fact sensitive and must be interpreted on a case by case basis. Id. at 231, 720 A.2d 342.
In Laidlow v. Hariton Machinery Co., Inc., supra, this court affirmed summary judgment dismissing an employee's cause of action against his employer on facts considerably more egregious than here. In that case, an employee suffered a severe and debilitating injury when his fingers and hand were caught in a rolling mill machine. Id. at 334, 762 A.2d 311. Although a safety guard had been installed on the machine, the device was "never" in its functioning position. Id. at 335, 762 A.2d 311. In fact, the device was "tied up" with wire so that it could not be readily engaged. Ibid. It was established that the device was not used because it hampered the operation of the mill. Id. at 336, 762 A.2d 311. The only time that the device was placed in the engaged position was when OSHA inspectors visited the plant, at which time supervisors ordered the device to be untied. Id. at 335-36, 762 A.2d 311.
The plaintiff-employee had approached his supervisor several times regarding the use of the device. Id. at 336, 762 A.2d 311. One week prior to the injury, the plaintiff requested that the device be engaged because he believed it was dangerous to operate the machine without the device. Ibid. However, plaintiff continued to operate the machine without the device until he was injured. Ibid.
This court upheld the grant of summary judgment, finding that a narrow reading of the "intentional wrong" exception excludes a prima facie showing of intent to harm, even where the employer intentionally removed a safety device. Id. at 340, 762 A.2d 311. We explained that both Millison and Mabee require that the employer's conduct be analyzed in the proper context and, in that regard, noted that the safety device went unused as "a matter of course" in the factory and that there were no accidents in previous years. Id. at 341, 720 A.2d 342. While acknowledging that removal of a safety device suggested a substantial risk of injury, we held that more is requireda substantial or virtual certainty of injuryand thus concluded the following:
What is at issue here is a workplace condition and circumstance that reasonable persons could not conclude constitute a substantial or virtual certainty of injury. This view does not provide an opportunity for "one free injury," for it is not an injury that proves certainty, but the workplace conditions described, and whether they implicate substantial or virtual certainty.

[Id. at 342.]
Here, the record admits no proof of intentional wrongdoing. In the first place, the accident occurred not through use of the allegedly defective machinery but rather because plaintiff slipped and fell at the workplace, entirely unrelated to her operation of the machine. In fact, at the time of the accident, the "peel and seal" attachment was not even being used although one of the timing belts was left hanging from a rotating drive shaft. To be sure, the safety guards supplied by the original manufacturer were not present on the machine.
*947 Nevertheless, the record in this case does not suggest there was a virtual certainty that an employee would trip and attempt to break her fall by entangling her arm in the hanging timing belt. To the contrary, there were no prior accidents placing the employer on notice of any dangerous condition. Moreover, plaintiff received safety training and instructions. She was under no production quota and there were no bonuses for the number of envelopes produced. The modification made to the original machine was simply a device enabling it to produce "peel and seal" envelopes and not to increase productivity.
Under these facts and circumstances, no rational fact finder could conclude plaintiff's employer is liable for an "intentional wrong." Judge Sachar properly precluded plaintiff's purported cause of action against defendant NEC-East based on this exception to the exclusivity bar of the Act.

ii
Plaintiff also asserted a direct liability claim against NEC East based not on its status as her employer but on its second capacity of manufacturer by virtue of its substantial alteration and modification of the Latex 1 machine. She also sued NEC-East's parent, NEC, vicariously, claiming it succeeds to the liability of the company it acquired, Champion Envelope, the so-called "manufacturer" of the allegedly defective "peel and seal" attachment. Judge Sachar granted defendants' motion for summary judgment dismissing these claims based on theories of "dual capacity" and "successor liability." On appeal, plaintiff argues that the grant of summary judgment was premature because additional discovery was essential to "explore the relationship between National Envelope Corporation-East and National Envelope Corporation as to issue [sic] of successor liability and dual capacity." We affirm because discovery was complete and neither of these theories of liability, on the facts of this case, are sustainable as a matter of law.
At the November 5, 1999 hearing, after indicating the complaint would be amended to allege a "dual capacity" theory, plaintiff's counsel represented that discovery was complete and engaged in the following colloquy:
MR. EPSTEIN: Judge, no more discovery is needed. The dispute of material fact is on the record, whether [defense counsel] agrees with me or concedes to the fact thatto the items that [defense counsel] was mentioning. Even if he concedes the items [defense counsel] was mentioning, there's a disputethere's enough evidence to show that a modification and alteration was made with regards to the machine.
THE COURT: You say no further discovery is necessary.
MR. EPSTEIN: Yes, Judge.
THE COURT: So what you're asking for is an amendment as to the manufacturing and the intentional, you're with no further discovery.
MR. EPSTEIN: Yes, Judge.
THE COURT: So we're putting off to another day whatsummary judgment, at which time you're going to brief this, perhaps, differently. Is that what you're saying?
MR. EPSTEIN: Exactly, Judge.
Indeed, by then the parties had been conducting substantial discovery for about one year and plaintiff never requested additional discovery. Discovery to date had established undisputably the chain of corporate acquisitions leading to the machine's placement with, and modification by, plaintiff's employernamely, the "peel *948 and seal" attachment was designed and developed by NEC-East when it was known as Champion Envelope but sometime after it was acquired by NEC.
Although plaintiff makes a belated claim that more discovery was essential, she has given no indication as to what essential facts she believes would have justified a denial of defendants' motion for summary judgment dismissing her complaint. "When the incompleteness of discovery is raised as a defense to a motion for summary judgment, that party must establish that there is a likelihood that further discovery would supply the necessary information." J. Josephson, Inc. v. Crum & Forster Ins. Co., 293 N.J.Super. 170, 204, 679 A.2d 1206 (App.Div.1996) (citing Auster v. Kinoian, 153 N.J.Super. 52, 56, 378 A.2d 1171 (App.Div.1977) (providing that where there has been a reasonable opportunity for discovery, the plaintiff has "an obligation to demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action")). Here all facts relevant to resolve the issues of "dual capacity" and "successor" liability as a matter of law had been fully developed and we are at a loss as to what information additional discovery might have revealed that would have made a difference.
Under these facts, plaintiff cannot avoid the effects of the Act's exclusivity bar by suing her employer in its capacity as a so-called "manufacturer" of the machine. The "dual capacity" doctrine stands for the proposition that an employer normally shielded from tort liability by the exclusive remedy principle in Workers' Compensation may be liable in tort to its own employee if it occupies, in addition to its capacity as an employer, a second capacity that confers on it obligations independent of those imposed on him as an employer. DeFigueiredo v. U.S. Metals Refining Co., 235 N.J.Super. 458, 459, 563 A.2d 76 (Law Div.1988), aff'd, 235 N.J.Super. 407, 563 A.2d 50 (App.Div.1989) (quoting 2A Larson, Law of Workmen's Compensation, § 72.80 (1983)).
This doctrine as it may apply to employers in their capacities as property owners or manufacturers of plant equipment has been described as "fundamentally unsound" and rejected in a majority of jurisdictions because of its circumvention of the clear legislative mandate of workers' compensation law. Billy v. Consolidated Machine Tool Corp., 51 N.Y.2d 152, 432 N.Y.S.2d 879, 883, 412 N.E.2d 934, 939 (1980). In New Jersey it is disfavored, if not outright disapproved. DeFigueiredo v. U.S. Metals Refining Co., supra; Doe v. St. Michael's Medical Center, Newark, 184 N.J.Super. 1, 8, 445 A.2d 40 (App.Div. 1982); Taylor v. Pfaudler Sybron Corp., 150 N.J.Super. 48, 51, 374 A.2d 1222 (App. Div.1977), certif. denied, 75 N.J. 20, 379 A.2d 251 (1977); Holliday v. Personal Products Co., 939 F.Supp. 402 (E.D.Pa. 1996), aff'd, 114 F.3d 1172 (3d Cir.1997). Furthermore, no case in this State has ever invoked the "dual capacity" doctrine to impose common law liability on an employer who modifies or alters a machine used exclusively in its plant. As this court held in DeFigueiredo v. U.S. Metals Refining Co., supra, "[w]hile the dual capacity doctrine may have viability in some circumstances, it is clearly inapplicable here, where the employee is injured during the course of his employment on the premises of the employer." Id. at 408.
Plaintiff's reliance on Petrocco v. At & T Teletype, Inc., 273 N.J.Super. 613, 642 A.2d 1072 (Law Div.1994) is entirely misplaced. There, the exclusivity remedy was held not to bar an injured employee of the surviving parent corporation from suing a subsidiary corporation later absorbed into the corporate parent by merger, where the *949 subsidiary corporation had manufactured an allegedly defective keyboard. The Law Division reasoned as follows:
To allow the defendant to hide behind the exclusive remedy provision in this situation would effectively allow a manufacturer who had already put defective products into the stream of commerce to shield itself from injuries those products may later cause by virtue of subsequently entering into a business transaction with someone other than the injured party. The exclusive remedy provision of the Workers' Compensation Act was not intended to immunize a third-party manufacturer in such a situation.

[Id. at 616, 642 A.2d 1072.]
Thus, Petrocco informs that employers may be held liable for the torts of defunct "third-party manufacturers" that had ceased to be third parties and had become unincorporated parts of the employer long before the injury occurred and indeed before the employment relationship even began.
The instant matter is clearly distinguishable. Unlike Petrocco where the employer and manufacturer of the machine were two separate corporations before the merger, here plaintiff's employer is the same entity that designed and developed the "peel and seal" attachment on which she was injured. NEC-East is not a defunct third-party manufacturer. More significant, however, NEC-East did not introduce the Latex 1 machine into the stream of commerce or modify it other than solely for its own use and not for distribution to the general public. Under these circumstances, defendant NEC-East can neither be considered the de facto manufacturer of the allegedly defective "peel and seal" attachment nor be sued in that capacity. Vega v. Standard Machinery Co., 290 N.J.Super. 434, 439, 675 A.2d 1194 (App.Div.1996) (holding employer not liable under a product liability theory for injuries sustained by its employee from a machine obtained by employer in a merger with its wholly-owned subsidiary because the wholly-owned subsidiary neither manufactured nor placed into the stream of commerce the allegedly defective machine). For purposes of the Act's exclusivity bar, defendant NEC-East "remains an employer in [its] relations with [its] employees as to all matters arising from and connected with their employment." Billy v. Consolidated Machine Tool Corp., supra, 432 N.Y.S.2d at 883, 412 N.E.2d 934.
This same reasoning shields the parent company, NEC, from any common law liability as well. Even if we assume the modifications effectuated by Champion Envelope rendered its successor-in-name NEC-East a "manufacturer" of the "peel and seal" attachment, plaintiff's employer never undertook the distribution operation of the original manufacturer New Jersey Machine to warrant imposition of successor liability upon its parent, defendant NEC. See Ramirez v. Amsted Industries Inc., 86 N.J. 332, 359, 431 A.2d 811 (1981) (Schreiber, J. concurring); Vega v. Standard Machinery Co., supra, 290 N.J.Super. at 439, 675 A.2d 1194.
Ramirez formulated a general rule governing the strict tort liability of a successor corporation for damages caused by defects in products manufactured and distributed by its predecessor. Id. at 343-48, 431 A.2d 811. Illustrative is Billy v. Consolidated Machine Tool Corp., supra. There, the New York Court of Appeals allowed the widow of an employee killed by an allegedly-defective machine, after receiving workers' compensation, to sue the employer as the successor in interest to a subsidiary corporation it had absorbed by merger, where prior to the merger the subsidiary corporation had designed and manufactured the machine.
*950 Again, in the case at bar, NEC's subsidiary, Champion Envelope, had modified the Latex 1 machine before it had changed its name to NEC-East but after its acquisition by NEC in 1981. It was not a predecessor business and remains in operation, a party to this lawsuit. Apart from these facts, NEC-East was neither a supplier nor a seller of the machine in the sense of an ordinary commercial or business transaction, Vega v. Standard Machinery Co., supra, 290 N.J.Super. at 439, 675 A.2d 1194, much less a distributor introducing the "peel and seal" attachment into the stream of commerce for purposes of imposing successor liability vicariously on its parent defendant NEC. Ramirez v. Amsted Industries Inc., supra, 86 N.J. at 359, 431 A.2d 811 (Schreiber, J. concurring). Lastly, there is no proof in this record that defendant NEC ever committed a single independent act with respect to the Latex 1 machine to pierce its corporate veil or otherwise hold it directly liable for any alleged defect. Volb v. G.E. Capital Corporation, 139 N.J. 110, 122-124, 651 A.2d 1002 (1995); Vernon v. Supermarket Services Corp., 250 N.J.Super. 8, 10, 593 A.2d 345 (App.Div.1991); Morris v. Krauszer's Food Stores, 300 N.J.Super. 529, 542, 693 A.2d 510 (App.Div.1997).
In sum, plaintiff's common law action against defendant NEC-East based on intentional wrongdoing and the "dual capacity" doctrine is precluded because of the Act's exclusivity bar. Her action against defendant NEC based on successor liability fails as well as a matter of law.
The judgment from which plaintiff appealed is affirmed.
NOTES
[1] Count Eight alleges, in pertinent part, as follows:

Defendant is liable to Plaintiff under the dual capacity doctrine because defendant... so negligently, carelessly, recklessly and intentionally designed, manufactured, assembled, installed, maintained and/or rebuilt the subject machine....
Count Nine alleges, in pertinent part, as follows:
Defendant ... had exclusive control of an adhesive machine.... Said machine was redesigned, remanufactured, assembled modified and/or built in a negligent, careless, reckless and intentional and dangerous manner....
[2] Count Ten alleges, in pertinent part, as follows:

Defendant National Envelope Corporation is liable to Plaintiff under strict liability in tort, because defendant National Envelope Corporation, and/or it [sic] predecessor corporation(s)... so negligently, carelessly, recklessly and intentionally designed, manufactured, assembled, installed, maintained and/or rebuilt the subject machine....
Count Eleven alleges, in pertinent part, as follows:
Defendant National Envelope Corporation... had exclusive control of an adhesive machine . . . Said machine was redesigned, remanufactured, assembled modified and/or built in a negligent, careless, reckless and intentional and dangerous manner....
[3] Although Judge Sachar denied plaintiff's motion to amend her complaint to add an "intentional wrongdoing" count, on appeal she treats the trial court's ruling as a grant of summary judgment in favor of defendants NEC-East and NEC. So viewed, our function is to determine whether the competent evidential materials, considered in the light most favorable to the non-moving party, "are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the nonmoving party." Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 523, 666 A.2d 146 (1995); R. 4:46-2. Summary judgment must be granted if "the pleadings, interrogatories, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment as a matter of law." R. 4:46-2.
[4] Although certification was denied, the Supreme Court will hear this case as of right due to the dissent in the Appellate Division, limited only to those issues raised in the dissenting opinion. R. 2:2-1(a)(2).