**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1256-19

JAMES DEAN, WILLIAM ROSS,
SR., WILLIAM ROSS, JR., JAMES
GIESE, JAMES JENCO,
CHARLES DWYER, WILLIAM
FIORE, FRANK CARPENTER,
ALASDAIR SWANSON,
BERNARD DAVIS, DIANE
IMPERIALE, CHARLES BALETTI,
CHARLES ROTUNDI, ANTHONY
CAPUTO, THOMAS HOATSON,
RICHARD BAUM, NANCY
PARIS, KI HYUN HAN, RICHARD
WRIGHT, WARREN PETRAGLIA,
ROBERT FAILLA, STEVEN
BURNS, ED CHARLES CERNY,
DINA GOLAS, JEFFREY
MORYAN, and KENNETH
KUNZMAN,

     Plaintiffs-Appellants,

v.

ROCK SPRING CLUB, INC.,
MGC-RSC, INC., and
MONTCLAIR GOLF CLUB, INC.,

     Defendants-Respondents.

_____

Submitted March 1, 2021 – Decided March 19, 2021

Before Judges Rothstadt and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-4329-19.

William J. Rush, attorney for appellants.

Sills Cummis & Gross, PC, attorneys for respondents (Mark Evan Duckstein, of counsel and on the brief; Kyle E. Vellutato, on the brief).

PER CURIAM

Plaintiffs, twenty-six former members of a defunct golf club, appeal from a November 8, 2019 order granting summary judgment in favor of defendants Rock Spring Club, Inc. (RSC), MGC-RSC, Inc. (Merged Club), and Montclair Golf Club, Inc. (MGC) and dismissing plaintiffs' claims with prejudice. We affirm for the reasons expressed by Judge Thomas R. Vena in his cogent and thorough memorandum opinion dated November 8, 2019.

The following facts were undisputed. RSC, a private country club in West Orange, owned a 138-acre property with a clubhouse. RSC offered various activities to its members, including access to an eighteen-hole golf course. RSC was governed by a twelve-member Board of Governors (RSC Board) and had written by-laws.

In 2015, RSC could no longer support itself financially and discussed a potential merger with another club facility located in Montclair, MGC. Alternatively, RSC considered selling its property and dissolving the club.

After weighing the options, the RSC Board decided a merger with MGC was preferable to selling its property. As a result, on October 19, 2015, RSC and MGC executed a letter of intent (LOI), outlining a merger of the two golf club facilities.

RSC and MGC began negotiating the terms of a merger agreement. During the negotiations, MGC discovered RSC's financial position was more precarious than originally stated, and it was agreed MGC would commit to operating the RSC property for three years, as opposed to the five years set forth in the LOI.

On November 19, 2015, the RSC Board provided information regarding the terms of the proposed merger to its members. A vote on the merger was held on December 19, 2015. RSC's members voted in favor of the merger. The final vote count tallied "125 votes in favor, 1 affirmative vote against, and 18 non-

voting members (87% approval)."[1]  Plaintiffs voted on the merger proposal as follows:  eighteen plaintiffs voted in favor and four plaintiffs did not vote.[2]

MGC's members voted to approve the merger and a merger agreement was signed on December 31, 2015.  As a result of the merger, plaintiffs' club was eliminated and the Merged Club, MGC-RSC, Inc., became a wholly owned subsidiary of MGC.[3]

Under the merger agreement, RSC members became MGC members and continued to use RSC's facility in West Orange.  In addition, the merger agreement provided the Merged Club would maintain RSC's property for a minimum of three years, including payment of the mortgage and RSC's other outstanding debts.  In the event RSC's property was sold within that three-year period, the merger agreement provided the former RSC members would have an economic interest in any net proceeds from such a sale.  Conversely, sale of the RSC property after the three-year period under the merger agreement would not

---

[1]  In accordance with RSC's by-laws, approval of the merger required a two-thirds vote of RSC's eligible voting members.

[2]  Pursuant to RSC's by-laws, only twenty-two plaintiffs were eligible to vote on the merger proposal at the time.

[3] MGC-RSC, Inc., later renamed Rock Spring Club, Inc., became vested with RSC's 183-acre property after the merger.

A-1256-19

entitle the former RSC members to any profits associated with a sale of the property. The merger agreement expressly provided MGC owed no "responsibility for liabilities due to RSC [r]esignees . . . or other former and current RSC [m]embers" except as provided in the document.

The merger agreement also required MGC to "either replace or assume RSC's indebtedness that [wa]s secured by a mortgage on RSC['s]" property. The estimated amount of the mortgage at the time was $3.75 million. Based on RSC's prior financial difficulties and in order to facilitate payment of RSC's debts, in October 2018, MGC decided to refinance the RSC property. As part of the refinancing, "title to the RSC property was conveyed from RSC to MGC by [d]eed dated October 30, 2018, and recorded on November 8, 2018[.]" The property transfer had no impact on the operation of RSC's facilities. Nor was there any consideration involved in the transfer of the property for the purpose of refinancing RSC's outstanding mortgage.

By late 2018, the financial situation of the Merged Club had not improved. It became apparent the Merged Club could no longer retain and operate RSC's property. By that time, a majority of former RSC members resigned from the Merged Club to avoid paying annual dues for the next year in accordance with the terms of the merger agreement. Prior to taking any action, MGC asked its

A-1256-19

members what should be done with RSC's property. Sixty-eight percent of the responding MGC members favored selling RSC's property.

In January 2019, MGC retained a commercial real estate broker to market RSC's property. Prior to officially listing RSC's property for sale, the Township of West Orange asked MGC to delay the listing so Essex County and the Township could discuss acquiring the property. Ultimately, the Township, without Essex County's participation, agreed to purchase RSC's property for $11 million. The Township and MGC signed a written contract of sale in late March 2019 and RSC's property was officially sold to the Township on April 18, 2019, more than three years after the date of the merger agreement.

Because plaintiffs believed they were entitled to a portion of the net proceeds from the sale of RSC's property, on June 11, 2019, they filed a complaint alleging defendants engaged in conversion, unjust enrichment, promissory estoppel, breach of the merger agreement, fraud in the inducement, common law fraud, and breach of the fiduciary duty of good faith. Prior to filing an answer, defendants moved for summary judgment. Plaintiffs filed opposition and Judge Vena heard counsels' arguments on November 8, 2019.

Judge Vena, ruling from the bench at the conclusion of the arguments, granted defendants' motion for summary judgment and dismissed plaintiffs'

A-1256-19

claims with prejudice.  A corresponding order and written decision were issued on November 8, 2019.

Judge Vena concluded the issues in defendants' summary judgment motion could "be resolved by reviewing the [m]erger [a]greement."  He noted RSC "simply merged with Montclair" and did not dissolve or liquidate its assets according to the merger agreement.  He also found "[p]laintiffs conceded they were not members [of the Merged Club] at the end of the three years."  In addition, the judge highlighted the provision in the merger agreement that "if any of the Rock Spring property was sold, transferred, leased or otherwise disposed of within the three-year period then Rock Spring members would have been entitled to a pro rata share equivalent to 'the face value of the relevant [Rock Spring] Share without interest.'"

Based on the unequivocal terms of the merger agreement, Judge Vena rejected plaintiffs' argument that the November 2018 deed, for the purpose of refinancing the mortgage on RSC's property, triggered plaintiffs' entitlement to a financial return as a transfer of the property within the initial three-year term of the merger agreement.  The judge explained "the deeding of the property yielded no funds and was simply a management tactic.  The fact that the

conveyance did not produce a return on the asset for the [p]laintiffs did not mean a breach occurred."

Regarding the argument that granting summary judgment prior to the end of the discovery period was premature and improper, Judge Vena found plaintiffs failed to identify the discovery required to establish any elements of their claim. Further, the judge determined "[a]dditional discovery would not shed any light on the dissolution and liquidation issue or the issue of the sale of the property."

On appeal, plaintiffs argue summary judgment was improper because there was no opportunity for discovery. In addition, plaintiffs contend the judge misinterpreted the facts and failed to provide adequate reasons in support of his summary judgment decision. We disagree and affirm for the oral and written reasons stated by Judge Vena on November 8, 2019. We add the only the following comments.

Generally, plaintiffs are correct that courts should "afford 'every litigant who has a bona fide cause of action or defense the opportunity for full exposure of his [or her] case." Mohamed v. Iglesia Evangelica Oasis De Salvacion, 424 N.J. Super. 489, 498-99 (App Div. 2012) (quoting Velantzas v. Colgate Palmolive Co., 109 N.J. 189, 193 (1988)). "Where a party opposing a motion

for summary judgment is unable to file fully responsive supporting papers because critical facts are particularly within the moving party's knowledge, the motion should be denied to permit the opposing party an opportunity for complete discovery." Id. at 499 (citing Bilotti v. Accurate Forming Corp., 39 N.J. 184, 188 (1963)).

However, summary judgment may be granted prior to the completion of discovery if a party fails to identify any discovery that might alter the outcome of the case. Kaczorowska v. Nat'l Envelope Corp., 342 N.J. Super. 580, 591 (App. Div. 2001) (quoting J. Josephson, Inc. v. Crum & Forester Ins. Co., 293 N.J. Super. 170, 204 (App. Div. 1996)) ("When the incompleteness of discovery is raised as a defense to a motion for summary judgment, that party must establish that there is a likelihood that further discovery would supply the necessary information."). A party opposing a summary judgment motion prior to the end of the discovery period "must do more than simply show that there is some metaphysical doubt as to the material facts." Triffin v. Am. Int'l. Grp., Inc., 372 N.J. Super. 517, 523-24 (App. Div. 2004) (quoting Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992)).

Judge Vena properly granted summary judgment because the facts relevant to resolution of plaintiffs' claims were set forth in the merger

9

agreement. Moreover, plaintiffs failed to identify any discovery that might have changed the outcome of the motion. No plaintiff submitted an affidavit or certification establishing relevant and material disputed facts or identifying critical information that could not be ascertained absent discovery. Pursuant to Rule 4:46-5, "an adverse party may not rest upon the mere allegations or denials of a pleading, but must respond by affidavits . . . setting forth specific facts showing that there is a genuine issue for trial."

For the first time on appeal, plaintiffs assert discovery was required to resolve certain disputes. However, even on appeal, plaintiffs do not establish how these disputes implicate issues of material fact requiring discovery beyond the plain language of the merger agreement. In addition, plaintiffs fail to explain the need for discovery to resolve these disputes or how the discovery would have altered the outcome of defendants' motion.

We also reject plaintiffs' contention the judge failed to set forth the facts upon which he relied in rendering his legal conclusions. Judge Vena made the specific findings, which more than adequately addressed each of plaintiffs' claims consistent with Rule 1:7-4. He found RSC "did not undergo a dissolution and did not liquidate its assets, it simply merged with MGC" and, therefore, the "dissolution or liquidation" provision did not apply. He also concluded

10

"[c]hanging title through deed, even between subsidiary and parent corporation, [wa]s a transfer" yet "the deeding of the property yielded no funds and was simply a management tactic." Judge Vena determined "[t]he dispute between the parties center[ed] on differing interpretations of the [a]greement[,]" and MGC complied with the terms of the merger, therefore "[a]dditional discovery would not shed any light on the dissolution and liquidation issue or the issue of the sale of the property."

Plaintiffs' claims were factually interrelated and premised upon the language in the merger agreement. Because plaintiffs did not challenge the validity of the merger agreement, Judge Vena based the dismissal of plaintiffs' claims on the unequivocal language in that document. Plaintiffs argue, generally, the judge's findings lacked sufficient "breadth" and "detail." However, plaintiffs do not argue Judge Vena's findings were incorrect or improper. Having reviewed the record, we are satisfied Judge Vena's factual findings and legal conclusions comported with the requirements of Rule 1:7-4.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1256-19