**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4237-19

SANDRA LACORTE,

    Plaintiff-Appellant,

v.

DISABLED INFORMATION
AWARENESS AND LIVING,
INC., and JOHN PETIX, JR.,
individually and in his official
capacity as Executive Director,

    Defendants-Respondents.

_____

Submitted March 16, 2021 – Decided May 19, 2021

Before Judges Fisher, Gilson, and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2498-18.

Frederick Coles, III, attorney for appellant.

Marshall Dennehey Warner Coleman & Goggin, attorneys for respondents (Howard B. Mankoff and Walter F. Kawalec, III, on the brief).

PER CURIAM

Plaintiff Sandra LaCorte sued her former employer, Disabled Information Awareness and Living, Inc. (DIAL) and former manager, John Petix, Jr., alleging that they engaged in gender discrimination and retaliated against her for filing a workers' compensation claim. She appeals from an order granting summary judgment to defendants and dismissing her complaint with prejudice before the close of discovery.

We affirm because plaintiff did not offer evidence establishing a prima facie case of employment discrimination, nor has she rebutted her employer's legitimate, non-discriminatory reasons for her termination. She also failed to establish a link between her termination and her workers' compensation claim. Finally, plaintiff did not identify any outstanding discovery that reasonably could have helped to prove her claims.

I.

Plaintiff began working for DIAL, a non-profit agency that provides services to disabled individuals, on June 20, 2011. Petix was plaintiff's immediate supervisor and the only male employee in their office. Plaintiff was initially employed as an employment access specialist, with no set duties. Eventually, her title changed to youth and transition services specialist. That role had a written description and responsibilities. In short, plaintiff was

required to complete certain forms, provide referrals over the phone, create presentations, and conduct outreach.

Petix's emails with plaintiff reflect a contentious relationship. On July 19, 2016, plaintiff was reprimanded after opening a Facebook account for DIAL without Petix's permission. Less than three months later, on October 4, 2016, plaintiff was again instructed not to take certain actions without Petix's authorization. Petix's executive assistant, in an email copying Petix, also contacted plaintiff about her failure to timely complete required forms in February 2017. In addition, Petix counseled plaintiff about her attitude and behavior, telling her to "slow down and stop presuming and jumping to conclusions about so many issues." Plaintiff received similar feedback from Petix in May and June 2017.

On May 22, 2017, plaintiff was injured at an outreach event. She notified DIAL of her injury and completed an incident report form, which was signed by plaintiff and Petix. Petix gave plaintiff DIAL's workers' compensation insurance information. She filed for benefits on June 7, 2017.

On July 9, 2017, Petix's dissatisfaction with plaintiff's performance culminated in her being placed on administrative leave. In his emailed notice, Petix stated the decision was based on "repeated incidents of blatant

3

insubordination," plaintiff's use of her work computer for personal activities during work hours, and her "continued pursuit of inappropriate activities outside the scope of [her] job duties." He also referenced warnings given to plaintiff for combative behavior and her failure to fulfill her duties on five days in June and July 2017.

On July 17, 2017, plaintiff met with Petix and executive assistant Mary Fitzpatrick, and was given a two-page performance improvement plan (PI plan). The PI plan listed eight job performance concerns: "(1) Insubordinate/Contentious Argumentative Attitude;" "(2) Incomplete Service Documentation;" "(3) Daily/Weekly Priority Setting;" "(4) Employee Education;" "(5) Supervisory Communication;" "(6) Scope of Work Activities;" "(7) Time Management;" and "(8) Use of Office Equipment." Plaintiff signed the PI plan during the meeting. She did not dispute its contents or object at that time.

On August 7, 2017, Petix contacted plaintiff about violations of the PI plan. He again accused her of engaging in inappropriate activities on company time, misusing DIAL's office equipment, and not focusing on outstanding reports. Plaintiff was warned that further violations would result in a second notice of disciplinary action. Plaintiff received her second notice of disciplinary

action the very next day because she "unnecessarily" printed supervisory emails and forwarded an internal memo to a non-DIAL employee. Plaintiff was terminated three days later.

The day before her termination, plaintiff sent a letter to DIAL Board President Charles Brooks, outlining her grievances with Petix. She referenced Petix's criticism, supervision, and confiscation of her emails and print jobs. Plaintiff also alleged that Petix engaged in "retaliatory acts," such as changing and requiring weekly approval of her schedule. Her letter did not attribute Petix's behavior to her gender or her workers' compensation claim.

On July 25, 2018, plaintiff filed a complaint against DIAL and Petix, alleging one count of gender discrimination in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, and one count of workers' compensation retaliation, N.J.S.A. 34:15-39.1. Defendants' answer maintained the sole reason for plaintiff's termination was her deficient performance. The parties engaged in discovery, which became contentious and resulted in the filing of several motions.

Following a motion to compel by defendants, plaintiff was deposed on January 28, 2020. Plaintiff admitted to some of the behaviors described in Petix's emails, but characterized Petix's emails as "misleading," and at least one

as "inaccurate." She conceded that she used her work computer to check her personal email but said she (at least initially) did so with Petix's permission. She also used DIAL's equipment to store non-work-related documents because she "didn't have a computer at th[at] time." She acknowledged she did not always complete her assignments but attributed this to her increasing workload. She also acknowledged copying information and emails in the final weeks of her employment and claimed she did so to "defend [her]self against false allegations."

Plaintiff maintained Petix only began characterizing her behavior as insubordinate and argumentative after her workers' compensation claim. Plaintiff testified she did not realize Petix's conduct was motivated by workers' compensation retaliation at the time she wrote her grievance letter. She made the connection after she was terminated, when she checked her calendar and recognized "all of a sudden he started treating [her] completely different."

On April 21, 2020, plaintiff filed a motion to, among other things, extend the discovery period and adjourn the May 18, 2020 trial date. On May 29, 2020, the trial court granted the motion in part over defendants' objections, extending discovery to August 28, 2020, and adjourning the trial to September 28, 2020.

6

Defendants were ordered to respond to some, but not all, of plaintiff's outstanding discovery demands.

In April 2020, defendants moved for summary judgment before discovery was completed. The motion was supported by a statement of material facts and documents outlining plaintiff's deficient performance. Plaintiff did not respond to the statement of material facts or file opposing proofs. Instead, she argued that summary judgment was inappropriate because of the outstanding discovery.

On June 19, 2020, the trial court entered an order granting defendants summary judgment and dismissing plaintiff's claims with prejudice. The court issued a written opinion explaining its ruling. The trial court found that plaintiff had failed to establish a prima facie showing of discrimination and defendants had presented valid reasons for plaintiff's termination. The court also found that "other than proximity in time, there [was] nothing to suggest that [p]laintiff was fired because of her worker[s'] compensation claim."

Additionally, the court found plaintiff made "no specific showing that any of the outstanding discovery [was] likely to be sufficiently supportive of [her] claims." In that regard, the court found plaintiff had the benefit of thousands of pages of discovery, including internal communications, and the outstanding

discovery would not help her sustain her burden. Accordingly, summary judgment was granted in defendants' favor. This appeal followed.

II.

On appeal plaintiff makes two arguments, contending that summary judgment should not have been granted before the close of discovery and the trial court erred by engaging in a "subjective analysis" of the facts and thereby making factual findings on disputed material issues. We disagree.

We use a de novo standard to review the grant of a motion for summary judgment. Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). Accordingly, we assess whether defendants demonstrated that there were no genuine disputes as to any material facts and whether they are entitled to judgment as a matter of law. Ibid.; Schiavo v. Marina Dist. Dev. Co., 442 N.J. Super. 346, 366 (App. Div. 2015); R. 4:46-2(c). A dispute of material fact is genuine "if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Schiavo, 442 N.J. Super. at 366 (quoting R. 4:46-2(c)).

Rule 4:46-1 allows a party to file a motion for summary judgment before the close of discovery, therefore claims of incomplete discovery alone will not

suffice.  See Wellington v. Est. of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003).  Instead, the opposing party must "demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action," Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (citations omitted), and identify the specific discovery needed, Trinity Church v. Lawson-Bell, 394 N.J. Super. 159, 166 (App. Div. 2007).

Plaintiff made no such showing.  Instead, she argues that the trial court should not have considered the motion for summary judgment because she was entitled to full discovery.  Plaintiff misunderstands her burden.

To prove employment discrimination, New Jersey courts have adopted the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  Viscik v. Fowler Equip. Co., 173 N.J. 1, 13-14 (2002). Under that framework, a plaintiff must first establish a prima facie case by a preponderance of the evidence.  Id. at 14.  The burden then shifts to the employer to produce "a legitimate, non-discriminatory reason for the adverse employment action."  Ibid. (citing Andersen v. Exxon Co., U.S.A., 89 N.J. 483, 493 (1982)). "After the employer does so, the burden shifts back to the plaintiff to show that the employer's proffered reason was merely a pretext for discrimination."  Ibid. (citing Andersen, 89 N.J. at 493).  "[P]laintiff retains the ultimate burden of

9

persuasion at all times; only the burden of production shifts." Ibid. (citing Andersen, 89 N.J. at 493).

Initially, it is important to note that plaintiff's failure to object to defendants' statement of material facts means each of defendants' sufficiently supported contentions about her deficient performance are deemed admitted for the purpose of the summary judgment motion. R. 4:46-2(b); Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 300 (App. Div. 2009). Thus, the question is whether, given defendants' supported facts, plaintiff has established a prima facie case of gender discrimination or workers' compensation retaliation. We hold that she has not.

To establish a prima facie case of gender discrimination, plaintiff must show that she (1) was a member of a protected class; (2) was performing her job at a satisfactory level; (3) was terminated; and (4) "was terminated under circumstances that give rise to an inference of unlawful discrimination." Young v. Hobart W. Grp., 385 N.J. Super. 448, 463 (App. Div. 2005) (citing Williams v. Pemberton Twp. Pub. Sch., 323 N.J. Super. 490 (App. Div. 1999)). Plaintiff cannot satisfy the second or fourth prongs. Defendants produced evidence establishing plaintiff was a subpar employee. Plaintiff not only admitted to this by failing to respond to defendants' statement of material facts, see R. 4:46-2(b),

she corroborated it during her deposition. Plaintiff conceded using her computer for improper purposes, violating the terms of the PI plan, and failing to complete reports.

Plaintiff has also provided no evidence to support an inference that she was unlawfully terminated because of her gender. She cannot contrast Petix's treatment of her with that of similarly situated male employees because Petix was the only male employee in their office. See, e.g., Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 110 (1990) (recognizing prima facie case is established where female employees receive unequal pay for substantially equal work performed by male employees); see also Schiavo, 442 N.J. Super. at 387-88 (prima facie case established where female employees showed, but for gender-specific characteristics, "they would not have been the object of the harassment"). Additionally, plaintiff was replaced by a woman. See Williams, 323 N.J. Super. at 503 (acknowledging replacement by a person outside protected class may, but is not required, to support inference of discrimination). Plaintiff does not explain how the outstanding discovery will establish what thousands of pages of materials could not. Kaczorowska v. Nat'l Envelope Corp., 342 N.J. Super. 580, 591-92 (App. Div. 2001).

A-4237-19

She has also failed to establish a prima facie case of workers' compensation retaliation. To make out a prima facie case, plaintiff must prove: (1) she made a claim for workers' compensation; and (2) she was discharged in retaliation for that claim. Hejda v. Bell Container Corp., 450 N.J. Super. 173, 192 (App. Div. 2017); Cerracchio v. Alden Leeds, Inc., 223 N.J. Super. 435, 442-43 (App. Div. 1988). Plaintiff's sole support is her contention that she only received negative feedback after her claim. The record, however, belies her position. The unrebutted documents produced by defendants establish that plaintiff was criticized and counseled about her employment deficiencies well before she filed for workers' compensation.

Moreover, we have recognized that temporal proximity alone is generally insufficient to demonstrate a causal link. Young, 385 N.J. Super. at 467 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)) (facts of case must be "unusually suggestive of retaliatory motive" to have temporal proximity alone support a connection). The circumstances surrounding plaintiff's termination are not "unusually suggestive" of workers' compensation retaliation. To the contrary, the record reflects DIAL was cooperative with her claim: Petix was forthcoming with DIAL's insurance information and signed off on plaintiff's injury report.

A-4237-19

Finally, plaintiff cannot prove the legitimate, non-discriminatory reasons articulated by defendants for her termination were pretexts for unlawful discrimination. See id. at 459-60. A plaintiff may show pretext and defeat a summary judgment motion "by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." DeWees v. RCN Corp., 380 N.J. Super. 511, 528 (App. Div. 2005) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)). They "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action[s] that a reasonable factfinder could rationally find them 'unworthy of credence.'" Ibid. (quoting Fuentes, 32 F.3d at 765). Plaintiff offers no proofs contradicting the reasons articulated by defendants.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4237-19