**Marion BECK and Solomon Beck, Plaintiff,**

**v.**

**CONSOLIDATED RAIL CORPORATION,**
**Defendant.**

**No. 04 CIV. 00221(CM).**

United States District Court, S.D. New York.

Oct. 13, 2005.

William T. Jaye, Edelman, Krasin & Jaye, PLLC, Carle Place, NY, for Plaintiff.

Bruce R. Calderon, Steven Verveniotis, Miranda & Sokoloff, LLP, Mineola, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

Plaintiffs bring this action against Consolidated Rail Corporation ("Conrail") alleging that Defendant negligently failed to maintain the property under its control, leading to Plaintiffs' injuries. Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that, on the date of Marion Beck's accident, Conrail did not own, manage and/or control the premises, and thus owned no duty to Plaintiffs. Plaintiffs request a denial of the Defendant's motion and, in the alternate, request leave to add two new Defendants as parties to this action.

For the reasons stated below, Defendant's motion for summary judgment is granted, and, accordingly, the Plaintiffs' claim against Conrail for negligence is dismissed. Plaintiffs' request for leave to add new Defendants is denied.

## I. BACKGROUND

The following material facts are undisputed by the parties. On September 8, 2001, Plaintiff Marion Beck ("Beck") drove with her daughter to Callicoon, New York, located in the town of Delaware. Def. Stmnt. at ¶ 4. After parking her car in a lot at approximately 2:30 in the afternoon, Beck walked across a sidewalk intending to cross the street. Complaint ("Cplt.") at

¶ 12. As Beck stepped on the edge of the sidewalk, the concrete curb broke under her foot, causing her to fall forward into the street. *Id.*; Def. Stmnt. at ¶ 11–12. Beck commenced this action on October 15, 2003, alleging negligence and seeking damages for her injuries. Simon Beck, Marion Beck's husband, also brings a claim for loss of services and consortium. Cplt. at ¶ 18–20.

The property in question was the subject of a lease agreement, dated December 6, 1985, between Conrail, as lessor, and the Town of Delaware, as lessee. *See* Defendant's Rule 56.1 Statement of Undisputed Facts ("Def.Stmnt.") at ¶ 23. Section 10 of the lease agreement provides, *inter alia,* that the "[l]essee shall perform all maintenance and repair of any nature, interior and exterior, ordinary and extraordinary, to the Premises ... necessary to keep the Premises ... in good order and in safe condition ...." *Id.* at ¶ 24.

In a deed dated June 1, 1999, Conrail transferred all its right, title, and interest in the property in question to its wholly-owned subsidiary Pennsylvania Lines LLC ("Penn Lines"). Def. Stmnt. at ¶ 21. The deed was validly recorded in the Sullivan County Clerk's Office on August 20, 1999. *Id.* On the same date, Penn Lines entered into an agreement with Norfolk Southern Corporation ("Norfolk"), granting Norfolk the right to operate and use Penn Lines' assets. *Id.* at ¶¶ 20, 25; Plaintiffs' Rule 56.1 Statement of Undisputed Facts ("Pl. Stmnt.") at ¶ 3. Norfolk was receiving rents on the property, pursuant to the 1985 lease agreement with the Town of Delaware, on the date of the accident. Def. Stmnt. at ¶ 25. There is no new or separate lease between the Town of Delaware and Norfolk. *Id.* at ¶ 31.

Defendant now moves for summary judgment on the ground that Conrail did not own, operate, manage, maintain, repair and/or control the premises in question, and thus owed no duty to the Plaintiff Marion Beck on September 8, 2001, the date of her accident. *See* Def. Mem. at 1.

## II. STANDARD FOR SUMMARY JUDGMENT

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 553 (1986). Whether any disputed issue of fact exists is for the Court to determine. *Balderman v. United States Veterans Admin.,* 870 F.2d 57, 60 (2d Cir.1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment."

*Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

Because the district court must determine "whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved ... in favor of either party," the non-moving party, in order to defeat the motion, must produce "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.... If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2510–11 (citations omitted). While the Court must view the record "in the light most favorable to the non-moving party," *Leberman v. John Blair & Co.,* 880 F.2d 1555, 1559 (2d Cir.1989) (citations omitted), and "resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought," *Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975) (citations omitted), the non-moving party nevertheless "must do more than simply show that there is some *metaphysical doubt* as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted) (emphasis added).

Plaintiffs assert two bases for denial of Defendant's motion for summary judgment. Neither is sufficient to withstand summary judgment.

## III. DISCUSSION

### A. *Defendant's Duty of Care*

### 1. *Direct Duty to Plaintiffs*

■ Plaintiffs contend that Conrail was negligent in failing to maintain and repair the sidewalk/curb area they allegedly owned, on which the Plaintiff had her accident. Cplt. at ¶ 13. In order to maintain an action for negligence, the Plaintiffs must establish that Defendant owed a duty to Plaintiff as, "[i]n the absence of duty, there is no breach and without a breach there is no liability." *Dugue v. 1818 Newkirk Mgmt. Corp.,* 301 A.D.2d 561, 562, 756 N.Y.S.2d 51, 52 (2d. Dept.2003) (quoting *Pulka v. Edelman,* 40 N.Y.2d 781, 782, 390 N.Y.S.2d 393, 395, 358 N.E.2d 1019, 1020 (1976)).

■ It is well established under New York law that "liability for a dangerous condition on property is predicated upon ownership, occupancy, control or a special use of the property;" the determinative issue being one of *possession* and *control.* *Rodriguez v. Am. Rest. Ventures, Inc.,* 923 F.Supp. 598, 601 (S.D.N.Y.1996) (emphasis added) (quoting *Millman v. Citibank, N.A.,* 216 A.D.2d 278, 627 N.Y.S.2d 451, 452 (2d Dep't 1995)); *Abdul–Azim v. RDC Commercial Ctr., Inc.,* 210 A.D.2d 191, 620 N.Y.S.2d 70, 71 (2d Dep't 1994). Where none of these factors are present, "a party cannot be held liable for injuries caused by a dangerous or defective condition of the property." *Minott v. City of New York,* 230 A.D.2d 719, 720, 645 N.Y.S.2d 879, 880 (2d Dep't 1996) (quoting *Turrisi v. Ponderosa, Inc.,* 179 A.D.2d 956, 957, 578 N.Y.S.2d 724, 726 (3rd Dep't 1992)).

■ It is equally well established that, generally, liability for a dangerous condition terminates "upon transfer of possession and control" of the property to another entity. *Plasynski v. Econ. Opportunity Council of Suffolk, Inc.,* 239 A.D.2d 478, 479, 658 N.Y.S.2d 65 (2d Dep't 1997); *see also James v. Stark,* 183 A.D.2d 873, 584 N.Y.S.2d 137 (2d Dep't 1992) (noting that liability for condition ceased upon conveyance of the property in question).

■ The *Plasynski* case cited by Defendant in its Memorandum of Law mirrors the facts at hand. The defendant in that

case transferred title and ownership of the property in question to another entity, Long Island Day Care Services, Inc., almost two and one-half years prior to the plaintiff's accident. *Plasynski,* 239 A.D.2d at 478, 658 N.Y.S.2d 65. As such, the court held that as of the date of the transfer, Long Island Day Care Services, Inc. was the "vendee in possession, and for all practical purposes was the owner of the property with all of the rights of an owner subject only to the terms of the agreement." *Id.* Here, it is uncontested that Conrail transferred its entire interest in the property, by deed, to Penn Lines on June 1, 1999, more than two years prior to the Plaintiff's accident. Def. Stmnt. at ¶ 21. Not only do Plaintiffs admit to this fact submitted by Defendant in their 56.1 Statement, but they also acknowledge that "[they] mistakenly brought suit against defendant, [Conrail] as owner." Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl.Mem.") at 6. Accordingly, it is apparent that Conrail owed no direct duty to Plaintiff, or anyone else, with respect to the property in question.

### 2. *Vicarious Liability*

Realizing that they have sued the wrong Defendant, Plaintiffs contend that Conrail exercised sufficient control over its wholly-owned subsidiary, Penn Lines, to be held vicariously liable for the alleged negligence in question. *See* Pl. Mem. at 1.

■ It should be noted at the outset that Defendant argues that this Court should disregard the "counter-statement" of facts submitted in Plaintiff's Rule 56.1 Statement of Undisputed Facts. *See* Defendant's Reply Memorandum of Law ("Def.Reply") at 2. Defendant correctly notes that Plaintiffs admitted all of the facts submitted by the Defendant in its Rule 56.1 Statement, as Plaintiffs explicitly

agreed with Defendant's Statement of Undisputed Facts in Plaintiffs' own 56.1 Statement. *See* Pl. Stmnt. at 1. The Defendant errs, however, when it contests that Plaintiffs "impermissibly" added facts to their opposition statement. "Rule 56.1(b) allows the opposing party to 'include ... additional paragraphs containing a separate short and concise statement of additional material facts as to which it is contended that there exists a genuine fact to be tried.'" *Wojcik v. 42nd Street Dev. Project, Inc.,* 386 F.Supp.2d 442, 448 (S.D.N.Y.2005) (citing Local Civil Rule 56.1(b)). In *Wojcik,* this Court held that as long as the plaintiff's allegations were properly supported by citations to the record, the Court would consider the statement as "proffering additional material facts as to which plaintiff contend[ed] that there exist[ ][ed] a genuine fact to be tried." *Id.* Accordingly, this Court will take into consideration the facts proffered by Plaintiffs in their 56.1 Statement in ruling on the summary judgment motion.

■ Plaintiffs, relying on their Rule 56.1 Statement, argue that Conrail exercised sufficient control over Penn Lines in order to be held vicariously liable and, as such, ask this Court to pierce Conrail's corporate veil to impose such liability. "Under New York Law, 'a parent company is not automatically liable for the acts of its wholly-owned subsidiary.'" *DeGraziano v. Verizon Communications, Inc.,* 325 F.Supp.2d 238, 245 (E.D.N.Y.2004) (quoting *Manchester Equipment Co., Inc. v. American Way and Moving Co., Inc.,* 60 F.Supp.2d 3, 6 (E.D.N.Y.1999)). Generally, the law view corporations as entities endowed with a separate and distinct existence from that of its owners. Because a principal purpose for organizing a corporation is to permit its owners to limit their liability, there is a presumption of separateness between a corpora-

tion and its owners, . . . which is entitled to substantial weight.

*Am. Protein Corp. v. AB Volvo,* 844 F.2d 56, 60 (2d Cir.1988) (citations omitted).

■ The party who seeks to pierce the corporate veil of a parent company must make a two-part showing: "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.,* 122 F.3d 130, 134 (2d Cir. 1997).

■ With regard to the first element, "[a] parent company will not be held liable for the torts of its subsidiary unless it can be shown that the parent exercises *complete dominion and control* over the subsidiary." *Montes Serrano v. New York Times Co. Inc.,* 19 A.D.3d 577, 578, 797 N.Y.S.2d 135, 136 (2d Dep't 2005) (emphasis added). Such dominion and control is *not* established through a mere showing that one corporation is a wholly-owned subsidiary of the parent or that the parent owns a controlling interest in the shares of the subsidiary. *See Billy v. Consol. Mach. Tool Corp.,* 51 N.Y.2d 152, 153, 432 N.Y.S.2d 879, 412 N.E.2d 934 (1980). In order to establish such domination over a subsidiary, courts may consider:

(1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the domi-

nating entity [or individual], and (10) intermingling of property between the entities.

*DeGraziano,* 325 F.Supp.2d at 246 (internal quotations omitted).

■ It is not necessary for this Court to analyze each factor in turn, as Plaintiffs have themselves ignored most of them. I will limit my discussion to the arguments Plaintiffs make. None suffice to permit piercing the corporate veil. Plaintiffs' first statement of "fact"—"Penn Lines existed solely to serve [Conrail's] interest in transferring its operations to Norfolk Southern Corporation"—is wholly conclusory and not evidentiary. It does not support the piercing of Conrail's corporate veil. Pl. Mem. at 3. See *Simmons v. U.S.,* 88 Fed. Appx. 435, 437–38 (2d Cir.2004) (noting that conclusory statements are insufficient to raise a genuine issue of material fact).

Similarly, the assertion that Penn Lines "had no employees" and so "it is *clear* that [Conrail] had to manage the daily operations of Penn Lines" (emphasis added) is conclusory. Pl. Mem. at 3. While Plaintiffs offer evidence that Penn Lines had no employees, they offer no evidence to support the logical leap that Conrail must, therefore, manage the daily operations of Penn Lines, rather than Norfolk or anyone else. The *Billy* case, cited by both Plaintiffs and Defendant, reiterates the standard that " 'the intervention by the parent in the management of the subsidiary' " must be "to such an extent that 'the subsidiary's paraphernalia of incorporation, directors and officers' are completely ignored." *Billy,* 51 N.Y.2d at 163, 432 N.Y.S.2d 879, 412 N.E.2d 934 (quoting *Lowendahl v. Baltimore & Ohio R.R. Co.,* 247 A.D. 144, 155, 287 N.Y.S. 62 (1st Dep't 1936), *aff'd* 272 N.Y. 360, 6 N.E.2d 56 (1936)). Plaintiffs submit no evidence to justify such a finding. To the contrary,

Plaintiffs agree that *Norfolk* was granted the right to operate Penn Lines as of 1999, and that it was a *Norfolk* employee who corresponded on behalf of Penn Lines with the Town of Delaware to determine whether Plaintiff fell within the premises leased by the town.

Plaintiffs do not allege that any control Conrail exercised over Penn Lines was used to commit a fraud or wrong that injured the party seeking to pierce. Where plaintiffs do not demonstrate that they were "disadvantaged, much less misled or defrauded" by the separate corporate identities, then they do not meet the second requirement for piercing the corporate veil. *Sec. Pac. Nat'l Bank v. Nyland Ltd.*, 1991 WL 267768, *4–5, 1991 U.S. Dist. LEXIS 17478, *14–15 (2d Cir. Dec. 2, 1991). It is, of course, really unnecessary to reach this second element, because Plaintiffs did not demonstrate the requisite control.

▮ Finally, Plaintiffs contend that the Defendant's motion for summary judgment is "improper" because the issue of a parent's control over its subsidiary in order to determine vicarious liability is not one that can be properly adjudicated at the summary judgment stage. Pl. Mem. at 4. Plaintiffs are just plain wrong. Any issue can be decided on summary judgment if the party opposing the motion offers no evidence in support of its position, which is the position in which Plaintiffs find themselves.

The cases cited by Plaintiffs do not hold the contrary. First, Plaintiffs point to *Allen v. Oberdorfer Foundries, Inc.*, 192 A.D.2d 1077, 1078, 595 N.Y.S.2d 995, 996 (4th Dep't 1993) for the proposition that issues of control "must be determined at trial." Second, Plaintiffs cite to *Pebble Cove Homeowners' Ass'n, Inc. v. Fidelity New York FSB*, 153 A.D.2d 843, 843–44, 545 N.Y.S.2d 362, 363 (2d Dep't 1989) for

the proposition that, generally, the issue of a parent company's control "is a question of fact to be decided at trial, rather than on a motion for summary judgment." *Allen*, however, stands only for the proposition that where a plaintiff has "failed to prove as a matter of law the requisite level . . . of control," then the issue of vicarious liability is improper for adjudication at the summary judgment stage. *Allen*, 192 A.D.2d at 1078, 595 N.Y.S.2d 995. Similarly, *Pebble* stands for the proposition that where the complaint failed "to adequately allege the means by which the parent . . . controlled its wholly owned subsidiary," then disposition of the issue on summary judgment was proper. *Pebble*, 153 A.D.2d at 844, 545 N.Y.S.2d 362. In light of the foregoing, there exists no triable issue of fact warranting denial of summary judgment.

B. *Plaintiffs' Motion for Leave to Amend their Complaint to Add Penn Lines and Norfolk as Defendants*

Plaintiffs seek leave to amend their pleading to add as additional parties Penn Lines and Norfolk under a relation back theory pursuant to New York CPLR § 203. *See* New York CPLR § 203. It is too late for Plaintiffs to amend their pleading. Pursuant to the Consent Scheduling Order, signed by both parties on June 15, 2004, no amendments to the pleadings were permissible after September 1, 2004. Consent Scheduling Order at ¶ 3.

▮ Moreover, Plaintiffs' claim against these new Defendants is time barred unless the claim relates back—and it does not. Therefore, amendment would be futile. Fed. R. Civ. Pro. 15(c) provides that an amendment of a pleading relates back in time to the original pleading when "relation back is permitted by the law that provides the statute of limitations applicable to the action." Fed. R. Civ. Pro. 15(c).

New York's relation back doctrine permits a plaintiff to amend a complaint and add new defendants even though, at the time of the amendment, the statute of limitations has expired. *See* New York CPLR § 203. The party seeking to invoke the doctrine must establish three elements in New York:

> (1) both claims arose out of the same conduct, transaction or occurrence; (2) the new party is 'united in interest' with the original party such that she can be charged with notice of the original action and will not be prejudiced in maintaining a defense on the merits; and (3) the new party should have known that, but for a mistake as to the proper party, the action would have been brought against her as well.

*Blakeslee v. Royal Ins. Co. of Am.,* 1998 WL 209623, *4, 1998 U.S. Dist. LEXIS 5977, *10 (S.D.N.Y. April 28, 1998), *citing Buran v. Coupal,* 87 N.Y.2d 173, 178, 638 N.Y.S.2d 405, 661 N.E.2d 978 (1995).

Defendants do not allege that Plaintiffs fail on the first or third elements and, as Plaintiffs state, those two elements "require little discussion." Pl. Stmnt. at 6. With regard to the first element, both the original claim against Defendant, and the proposed amended pleading, concern Plaintiff's accident on September 8, 2001. With regard to the third element, Penn Lines should have known that the action would have been brought against it, as owner of the subject property, were it not for Plaintiffs' mistake. Def. Stmnt. at ¶ 21–22. Further, Norfolk should have known that the action would have been brought against it, as lessee of the subject property, were it not for the incorrect information received by Plaintiffs in the Town Clerk's office. Def. Stmnt. at ¶ 25. Finally, in New York, courts considering the third element "typically deem dispositive the presence or absence of bad faith

on the party of the party seeking the amendment." *Walker v. Agro,* 2000 WL 744536, *4 (E.D.N.Y. May 19, 2000). The requirement will be "satisfied if 'the omission to name the new party in the original complaint was not an attempt to secure some tactical advantage in the litigation.'" *Id.* (quoting *Yaniv v. Taub,* 256 A.D.2d 273, 275, 683 N.Y.S.2d 35, 38 (1st Dep't 1998)). As there is no indication that Plaintiffs intentionally omitted Penn Lines or Norfolk from the original complaint, the third element is satisfied.

■■■■ Plaintiffs fail, however, upon analysis of the second element. For purposes of N.Y. CPLR § 203, a party is united in interest with another party:

> where 'the interest of the parties in the subject-matter is such that they stand or fall together and that judgment against one will similarly affect the other.' In other words, 'interests will be united, only where one is *vicariously liable* for the acts of the other.' 'Underlying the doctrine of vicarious liability ... is the notion of control.'

*Walker,* 2000 WL 744536 at *4, (emphasis added) (citing *L & L Plumbing & Heating,* 253 A.D.2d 517, 677 N.Y.S.2d 153, 154 (2d Dep't 1998)). As discussed at length, the mere existence of a parent-subsidiary relationship is insufficient to establish vicarious liability, and therefore a unity of interest, between two corporations. *See Feszczyszyn v. General Motors Corp.,* 248 A.D.2d 939, 940, 669 N.Y.S.2d 1010, 1012 (4th Dep't 1998). In accordance with the discussion *supra,* Plaintiffs have failed to proffer evidence sufficient to justify imposing vicarious liability on Conrail and have thus likewise failed to establish the unity of interest required for application of the relation back doctrine.

■■■■ With regard to the unity of interest and relationship between Conrail and Norfolk, Plaintiff does no more than to

state that Norfolk employees were produced for depositions on behalf of Conrail. Pl. Stmnt. ¶ 11–12. It is well established that, for vicarious liability to exist, the parent corporation must exercise complete dominion and control over the subsidiary's operations, and demonstrating only that there are common shareholders and officers is insufficient to establish that the two corporations are united in interest. *See Achtziger v. Fuji Copian Corp.*, 299 A.D.2d 946, 948, 750 N.Y.S.2d 413, 416 (4th Dep't 2002); *Mercer v. 203 East 72nd Street Corp.*, 300 A.D.2d 105, 106, 751 N.Y.S.2d 457, 458 (1st Dep't 2002). Accordingly, Plaintiffs have failed to establish a unity of interest between Conrail and Norfolk, and they can not, therefore, prevail on their request for application of the relation back doctrine.

## IV. CONCLUSION

It is hereby ordered that the Defendant's motion for summary judgment is granted and the case is dismissed. Additionally, the Plaintiffs' request for leave to add new defendants is denied. The Clerk of the Court is directed to enter judgment for Defendant and to close the file.

This constitutes the decision and order of the Court.